■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MILTON BENNETT, Appellant. [614 NYS2d 430] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Egitto, J.), rendered November 2, 1989, convicting him of murder in the second degree, criminal possession of a weapon in the second degree (three counts), and criminal possession of a weapon in the third degree (three counts), upon a jury verdict, and imposing sentence. By decision and order of the Court dated October 26, 1992, the matter was remitted to the Supreme Court, Kings County, to hear and report on the prosecutor's exercise of peremptory challenges, and the appeal was held in abeyance in the interim (see, People v Bennett, 186 AD2d 812). The Supreme Court, Kings County, has conducted a hearing and submitted its report to this Court.

Ordered that the judgment is reversed, on the law, and a new trial is ordered. No questions of fact have been raised or considered.

The defendant has made out a prima facie showing of purposeful racial discrimination in the selection of the jury *(see, People v Bennett, supra,* at 812). The burden is then upon the prosecutor to provide specific race-neutral explanations for the rejection of the potential jurors of the defendant's race *(see, Batson v Kentucky,* 476 US 79, 97). We find that most of the prosecutor's explanations for her challenges were race-neutral and non-pretextual. For example, several potential jurors were challenged on the ground that they had stated that the defendant and the codefendant looked familiar to them. Just as familiarity with a crime scene has been held to be a sufficient race-neutral explanation *(see, e.g., People v Simmons,* 79 NY2d 1013), we find that an expressed familiarity with the defendants is also an acceptable race-neutral explanation, and the hearing court properly credited the explanation as non-pretextual. Also, certain facial expressions by a juror indicating antagonism toward the court, which expressions were recorded in the prosecutor's notes and credited by the court, are sufficiently verifiable and race-neutral, and the court's determination is to be given great weight *(see, People v Hernandez,* 75 NY2d 350, 356). The record also supports the prosecutor's conclusion that one juror was equivocal when answering questions about an incident in which he was assaulted, and another juror, who had been the victim of a mugging, stated that she did not feel that she had been treated fairly by the police, and initially stated that she did not feel she could be fair and impartial. Challenges to those jurors were facially race-neutral and were properly credited by the hearing court as non-pretextual. However, with regard to three potential jurors, we find the prosecutor's explanations to be insufficient.

One African-American woman was challenged because she wore a head scarf, which the prosecutor felt showed a certain disrespect for the proceedings. At the *Batson* hearing, the prosecutor stated that if a potential juror's attire was a concern to her, she would make a note of it. She did, indeed, note the potential juror's head scarf. However, she also noted that another potential juror, who was not an African-American, had worn a Chicago Bulls jacket, which was apparently enough of a concern to her to indicate it in her notes. Yet, this juror was not challenged. Another potential juror, also not an African-American, had worn an earring and a tattoo, which

the prosecutor noted, but he, too, was unchallenged. A third non-African-American juror, was not challenged, although the prosecutor noted that he wore a hunter's shirt. There was no satisfactory reason given why these three non-African-American jurors should be treated differently than the woman who wore a head scarf. Thus, although the reason for the challenge of that potential juror may appear facially race-neutral, we find that this basis for the challenges was applied in a discriminatory manner, and we conclude that it was pretextual, and insufficient to support the prosecutor's burden of coming forward with a race-neutral explanation (see, People v Manuel, 182 AD2d 711).

Another African-American woman was challenged because she worked for the Department of Income Maintenance, which the prosecutor described as a "liberal" profession, and the prosecutor felt that she would be more sympathetic to the defendants, who the prosecutor described as "underprivileged". However, the prosecutor at the Batson hearing admitted that she did not know if the defendants were underprivileged, and did not consider them to be so. Thus, this potential juror was challenged solely due to her employment at the Department of Income Maintenance. While a person's employment or lack of employment may, in an appropriate case, constitute a legitimate race-neutral explanation for exclusion, it must somehow be related to the factual circumstances of the particular case (see, People v Duncan, 177 AD2d 187, 194; People v Williams, 199 AD2d 445). It is also significant that the prosecutor made no inquiry of this potential juror regarding her attitudes toward the "underprivileged" or toward these particular defendants (see, People v Dabbs, 192 AD2d 932, 934).

Finally, another African-American woman, was challenged because she was a social worker who worked with pregnant women and the mentally retarded. Again, the prosecutor in no way related her concerns regarding this potential juror's employment to the particular circumstances of this case. The mere fact that she was a social worker is an inadequate race-neutral explanation for the challenge (see, People v Miller, 144 AD2d 94, 97). Significantly, another non-African-American juror, worked with deaf and mentally retarded people, yet she was not challenged. When asked at the Batson hearing to explain this disparate treatment, the prosecutor simply stated "that's different", when referring to this potential juror's occupation. Such an explanation is no more than a general denial of ill motive and an assertion of good faith, which is

inadequate to support the prosecutor's burden *(see, Batson v Kentucky, supra,* at 97-98; *People v Miller, supra,* at 96-97).

For the foregoing reasons, we find that the defendant's conviction must be reversed, and a new trial ordered. Mangano, P. J., Thompson, Rosenblatt and Copertino, JJ., concur.