■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE DALHOUSE, Appellant. [658 NYS2d 408] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Vaughan, J.), rendered November 28, 1995, convicting him of attempted murder in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

The jury convicted the defendant of attempted murder in the second degree based upon, *inter alia,* the testimony of the defendant's young girlfriend that on March 31, 1995, he stabbed her four times, angry because she had become pregnant and was threatening to tell the defendant's parents about her condition.

During jury selection, the prosecutor exercised 8 of his 11 peremptory challenges to strike 8 out of 9 black potential jurors. Defense counsel raised a challenge under *Batson v Kentucky* (476 US 79), and the prosecutor provided race-neutral explanations for the peremptory challenges. The defense counsel thereafter argued that these explanations were pretextual. On appeal, the defendant claims that his right to equal protection of the law was violated when the trial court accepted these pretextual explanations. We agree that the reasons the prosecutor gave for striking several of the prospective jurors were pretextual, with the result that a new trial must be held.

In determining whether a party has exercised peremptory challenges to strike potential jurors for reasons that implicate equal protection concerns, the court must engage in a three-step process: "First, the defendant must allege sufficient facts to raise an inference that the prosecution has exercised peremptory challenges for discriminatory purposes. Second, if the requisite showing has been made, the burden shifts to the prosecution to articulate a neutral explanation for striking the

jurors in question. Finally, the trial court must determine whether the proffered reasons are pretextual" *(People v Allen,* 86 NY2d 101, 104).

Here, we are not concerned with the first step of the process *(People v Manswell,* 223 AD2d 561; *People v Payne,* 213 AD2d 565, *affd* 88 NY2d 172), but rather with the second and third steps. The second step "is met by offering any facially neutral reason for the challenge—even if that reason is ill-founded—so long as the reason does not violate equal protection" *(People v Allen, supra,* at 109). Where, as here, the prosecutor articulates facially race-neutral reasons for his strikes, and the defendant thereafter challenges those reasons as being pretextual, the process moves to step three, and the question of whether the prosecutor intended to discriminate becomes a question of fact *(see, People v Allen, supra,* at 110). We conclude that the trial court improperly credited the prosecutor's explanations as race-neutral *(see, People v Allen, supra; People v Maye,* 219 AD2d 683).

For example, in the cases of two black potential jurors excused by the prosecutor, the reason given was that they were either employed as security guards or were closely related to security guards. As the prosecutor explained: "I excluded any and all people who were either security guards or related to security guards * * * [because] it's been my experience * * * that many times people who are security guards or are related to security guards put themselves in the place of police officers and second guess what they would do". Although a person's employment may, in an appropriate case, constitute a legitimate race-neutral reason for striking him or her as a potential juror, the concerns regarding those factors must somehow be related to the factual circumstances of the case and the qualifications of the juror to serve on that case *(see, People v Richie,* 217 AD2d 84; *see also, People v McMichael,* 218 AD2d 671; *People v Jackson,* 213 AD2d 335; *People v Bennett,* 206 AD2d 382; *People v Williams,* 199 AD2d 445). The prosecutor offered no explanation as to how a presumed tendency to "second-guess" police officers would affect these jurors' ability to be impartial in a case that hinged upon the complainant's testimony, and that scarcely involved the testimony of police officers. In addition, we note that the same prosecutor did *not* challenge another prospective juror who worked as a security guard, and whose son was employed as a security guard *(see, e.g., People v Bennett, supra; People v Stiff,* 206 AD2d 235, *lv denied* 85 NY2d 867, *cert denied* 516 US 832).

Although these two pretextual explanations alone suffice to

warrant reversal of the defendant's conviction *(see, e.g., People v Bolling,* 79 NY2d 317; *People v Jones,* 223 AD2d 559), we note that the explanations given by the prosecutor for striking several additional black potential jurors were likewise transparently pretextual. For example, he excused one juror on the ground that the juror had been "evasive" about his job and only confessed at the end of questioning that "he wasn't working right now" when in fact the juror initially introduced himself as being a "commercial advertiser" who had been "laid off" and there is no indication of how either his unemployment or the details of his previous job would have affected his ability to serve on the instant panel *(see, e.g., People v McMichael, supra; People v Williams, supra).* The prosecutor's vague reason for striking another black potential juror was that she held "her chin in her hand" during voir dire—although the record reflects that the juror was otherwise alert, responsive, and cooperative *(see, e.g., People v Jackson, supra; People v Bennett, supra).* The prosecutor asserted that another black prospective juror had expressed sympathy for the defendant, and had stated that "the People have a smooth way of lying", when, in fact, it was a different juror who admitted to feeling sorry for the youthful defendant, and the juror's actual words regarding the judging of a witness's credibility were: "some people could have a very smooth way of going against the truth * * * a good talker who would make you believe what is not. You have to look them in the eye, watch their body language".

Under the totality of the circumstances, we conclude that the prosecutor's proffered race-neutral explanations for excluding these black potential jurors were pretextual, and that the prosecutor was in fact motivated by a discriminatory intent *(see, e.g., People v Jackson, supra; People v Peart,* 197 AD2d 599; *People v Benson,* 184 AD2d 517; *People v Manuel,* 182 AD2d 711).

In view of the foregoing determination, we need not address the remaining issue raised by the defendant. Joy, Friedmann and Florio, JJ, concur.

O'Brien, J. P., dissents and votes to affirm the judgment appealed from with the following memorandum: As stated by the Court of Appeals in *People v Hameed* (88 NY2d 232, 236-237, *cert denied* — US —, 117 S Ct 704): "This Court and the United States Supreme Court have settled on a three-step procedure governing trial court review of claimed discrimination in the exercise of peremptory challenges as part of jury selection *(see, People v Payne,* 88 NY2d 172; *People v Allen,* 86 NY2d 101; *see also, Purkett v Elem,* 514 US [765], 115 S Ct 1769; *Hernandez v*

*New York,* 500 US 352, *affg* 75 NY2d 350). In cases such as the present one, the defense must set forth a prima facie basis of discrimination, at which point the prosecution must come forward with facially race-neutral reasons for its challenged peremptory strikes *(People v Payne, supra).* The Trial Judge must ultimately determine whether the proffered reasons are pretextual, the burden of persuasion resting on the challenger to the peremptory strike".

Even though the trial court indicated that it was not convinced that the defendant had made out a prima facie case, it required the prosecutor to provide race-neutral explanations for his challenges. Thus, the issue of whether a prima facie case was established is moot *(see, People v Payne,* 88 NY2d 172, 181-182). The prosecutor satisfied his burden under step two of the above analysis by providing a race-neutral explanation for his challenges. "The step two 'explanation' required of a striking party is quite minimal, and mere *facial* race neutrality fulfills the burden of production" *(People v Payne, supra,* at 183, quoting *People v Allen,* 86 NY2d, *supra,* at 109 [emphasis in original]) and "a court must uphold a proffered explanation as race neutral * * * if the reason is 'based on something other than the race of the juror' " *(People v Payne, supra,* at 183, quoting *Hernandez v New York,* 500 US 352, 360).

In step three, the ultimate burden of persuasion rests on the party objecting to the peremptory strikes—here, the defendant *(see, People v Payne, supra,* at 182). To meet his burden, the defendant must articulate, *at the trial level,* arguments to support his claim that the prosecutor's explanations are pretextual *(see, People v Allen, supra,* at 110-111). If the grounds, both factual and legal, for asserting a claim of discrimination are not articulated in the colloquy at trial, the claim is unpreserved for appellate review *(see, People v Smith,* 81 NY2d 875; *People v Morrison,* 235 AD2d 553).

The defendant claims, on appeal, that the prosecutor's explanations for peremptory challenges to eight prospective black jurors reveal a discriminatory intent. Three of those prospective jurors were challenged during the first round of jury selection and the remaining five jurors were challenged in the second round.

With regard to the jurors challeged in the first round, (Jurors No. 1, No. 10, and No. 13), no specific issue is raised on appeal with respect to the challenge to Juror No. 13. The record reveals that the prosecutor explained that this juror was challenged because she felt her brother had been treated unfairly by the police in an unrelated prosecution, and defense counsel responded "I have no quarrel with that one".

With respect to Jurors No. 1 and No. 10, the prosecutor gave reasons which were based on the jurors' demeanor and responses to questions. Specifically, the prosecutor explained that the challenge to Juror No. 10 was based on his impression that she had no interest in the case. The challenge to Juror No. 1 was based on the prosecutor's perception that the juror had been evasive about his employment. Although defense counsel sought to characterize the prosecutor's challenge to Juror No. 1 as based simply on the fact that he was unemployed, the court corrected him and pointed out that the prosecutor's challenge was based on the juror's evasive response to questions about how he earned his living. The trial court rejected the defense counsel's argument that the explanations were pretextual.

My colleagues conclude that the prosecutor's explanations were "transparently pretextual". However, the trial court was in the best position to determine if Juror No. 1 was, in fact, evasive about his employment. Moreover, the cold record provides no basis for this Court to determine that Juror No. 10 was not uninterested in the case, as the prosecutor claimed, but was instead "alert, responsive, and cooperative" as my colleagues, disagreeing with the Trial Judge, conclude. The trial court's determination regarding the nonpretextuality of the prosecutor's explanation is "entitled to great deference on appeal and ought not be disturbed where, as here, it is supported by the record" (People v Payne, 213 AD2d 565, 566, affd 88 NY2d 172, supra; see also, Batson v Kentucky, 476 US 79, 97-98, n 21; People v Hernandez, 75 NY2d 350, 356, affd 500 US 352).

The defendant's contentions with respect to the five black prospective jurors challenged in round two are unpreserved for appellate review as the defense counsel did not advance before the trial court the arguments now made on appeal. Since the prosecutor's reasons were facially race neutral, and the defendant failed to meet his burden of proof of a discriminatory motive, the court's determination should not be disturbed.

The prosecutor gave the following reasons for challenging three of the five black prospective jurors in round two: Juror No. 14 appeared slow and did not seem to understand the questions he was asked, Juror No. 8 expressed sympathy for the defendant because of his age, and Juror No. 12 had a cousin who was on trial in Virginia for attempted murder. With respect to these jurors, the defense counsel merely made a general statement that none of the reasons given by the prosecutor were sufficient and suggested that the number of challenges alone

showed discriminatory intent. The specific claims now made on appeal were never raised at trial.

Regarding the two remaining black prospective jurors, who were challenged in round two, the prosecutor explained that he challenged Juror No. 1, who was married to a security guard, and Juror No. 9, who worked as a security guard because, in his experience, such jurors tend to second guess the police. The defense counsel's response to this explanation was that it was "no more a reason for excluding (the juror) than it would be if (the juror) happened to have been a police officer or a correction officer". The claims now made on appeal, that the prosecutor's explanation was pretextual because the case hinged upon the complainant's testimony and because another juror who worked as a security guard was not challenged, are unpreserved for appellate review because they were never articulated below *(see, People v Allen,* 86 NY2d 101, *supra; People v Smith,* 81 NY2d 875, *supra).*

The majority is now reversing because "the prosecutor offered no explanation here of how a presumed tendency [of security guards] to 'second-guess' police officers would affect these jurors' ability to be impartial in a case that hinged upon the complainants' testimony and that scarcely involved the testimony of police officers" and because on another round of the voir dire the prosecutor did not challenge a prospective juror who worked as a security guard. First, it was not the prosecutor's duty to offer such an "explanation". All the prosecutor was required to advance at this stage was a "race-neutral explanation for striking the jurors in question" *(People v Payne,* 88 NY2d 172, 181, *supra,* quoting *Hernandez v New York,* 500 US 352, 358-359, *supra).* The prosecutor *did* advance a "race-neutral explanation", i.e., that security guards are inclined to second guess the police. It was then the responsibility of the defendant's trial counsel to *articulate* a claim that the explanation was pretextual because the case "hinged upon the complainant's testimony and * * * scarcely involved the testimony of police officers", not his appellate counsel. Second, the fact that the prosecutor did not challenge the prospective juror who was a security guard is, as the Court of Appeals has said, one of the "factors we have identified as raising an inference of discrimination" *(People v Allen,* 86 NY2d 101, 110, *supra).* However, it is a factor which "may not always indicate pretext" and therefore if the defense counsel thought it suggested discrimination, he was required to "fully [articulate]" his concerns in this regard before the *trial court (People v Allen, supra,* at 110-111). The reason why this assertion must

be fully articulated before the trial court seems to me to be patently obvious. If the trial attorney does not point out, or at least remind, the Judge that opposing counsel did not strike prospective jurors having a similar profile on a previous round of the voir dire, how is the Trial Judge supposed to rule on the issue?

Incidentally, the action of the majority here in reversing the defendant's conviction is particularly remarkable in light of the defense counsel's summation, from which the following is an excerpt:

"The only testimony she brought forth was—and it's only her testimony—nobody else saw this—there is no corroboration of this, that she was stabbed by George Dalhouse.

"She said when the police interviewed her, Officer Cruz, 'That my boyfriend stabbed me. I was on the 17 floor. Here is his picture. Arrest George.'

"George is arrested. Case closed. That is the end of it. Of course she testified to much more than that, but essentially that is what she testified, and that is what happened. Case closed. Beyond that, no investigation whatsoever. They didn't do a thing.

"They had an obligation not only to her, not only to you, but to George Dalhouse. They had an obligation to see if what she told them was true, because otherwise George Dalhouse is in a heck of a pickle.

" 'My boyfriend stabbed me. Here is his picture. Go arrest him.' Case closed. Now what did [the] police do after that?

"They administered to her physical needs. They called EMS. EMS came, took her to the hospital, where she was taken care of.

"Now, the police had a very definite obligation to investigate further.

"But what did they do? They did absolutely nothing."

In *People v Allen* (86 NY2d 101, 110-111, *supra*), Chief Judge Kaye provided the courts of this State with a format which fits the situation here precisely:

"When defendant challenges as pretextual the People's explanation as to a particular juror, the inquiry has become factual in nature and moves to step three. Unlike step two, step three permits the trial court to resolve factual disputes, and whether the prosecutor intended to discriminate is a question of fact *(Hernandez,* 500 US, at 364-365). If after inquiry the trial court concludes that a proffered reason is pretextual, defendant has met his or her ultimate burden of proving

intentional discrimination *(Hernandez,* 500 US, at 363-364) * * *

"As to each of the challenged male jurors, the People offered reasons that were gender neutral, reasonably specific and trial related *(Batson,* 476 US, at 98). * * * If credited, these reasons did not violate equal protection, and were therefore sufficient as a matter of law to rebut the threshold showing of discrimination *(Hernandez,* 500 US, at 359).

"Defendant's claim that these reasons were pretextual rests on his allegation that the gender-neutral reasons offered at the *Batson* hearing were not applied equally to exclude women from the jury who exhibited the same characteristic. That circumstance is among the factors we have identified as raising an inference of discrimination *(People v Bolling,* 79 NY2d 317, 324, *supra).* Apparently uneven application of neutral factors may not always indicate pretext, however, but simply an incomplete understanding of the full reasons for the prosecutor's decision to seat some jurors while challenging others. For that reason, where counsel has perceived something suggesting a discriminatory motive in the questioning of a prospective juror, we require that those concerns be fully articulated to the trial court during its factual inquiry *(People v Childress,* 81 NY2d 263, 269)".

By simply adopting the device of labeling the prosecution's proffered reasons for its peremptory strikes as "transparently pretextual" and reversing on that account, what the majority here has done is to effectively eliminate step three of the *Batson* analysis at the trial level. The majority has determined that step three should be conducted at the appellate level. Moreover, the defendant is to be allowed to assert his grievances for the first time in the Appellate Division, even those grievances which are, to coin a phrase, "transparently bogus". Respectfully, I do not believe that this is the scenario that the Court of Appeals had in mind when it referred to the trial court's "singular adjudicative responsibility and supervision of the jury selection process" *(People v Hameed, supra,* 88 NY2d, at 238). I therefore dissent and since the defendant's other contentions on appeal are also devoid of merit, I would affirm the defendant's conviction of attempted murder in the second degree and the sentence imposed thereon.