OPINION OF THE COURT
Leon Ruchelsman, J.
The defendant stands charged with two counts of murder in the second degree (Penal Law § 125.25 [1], [2]), criminal possession of a weapon in the second degree (Penal Law § 265.03) and criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]). During the third round of jury selection the People exercised two peremptory challenges against two African-American women. Thereafter, the defendant challenged the propriety of those challenges and asserted that the People had used 8 out of 11 peremptory challenges to exclude black women from the jury. The defendant claimed that the People’s use of their peremptory challenges exhibited a pattern of discrimination by excluding black women from the jury. The People responded that they had only challenged seven black women and in any event their use of peremptory challenges did not constitute a prima facie showing of discrimination.
The court ordered the People to provide race-neutral reasons for the challenges of those two women. The People responded that those women had been wearing dress hats inside the courtroom which the People represented reflect middle class working black women. The People contended that those women would not adequately evaluate the testimony of an unemployed black female witness. They argued that these middle class jurors would not relate to a witness of a vastly different social background and would therefore question the veracity of her testimony. The defense argued that those reasons were not legitimately race-neutral and were merely pretextual. The court agreed and seated the two jurors. This decision supplements the court’s previous oral ruling.
Conclusions of Law
The peremptory challenge is a challenge to a prospective juror for which no reason need be provided (CPL 270.25 [1]). However, where one party uses peremptory challenges in ways which give rise to a pattern of discrimination then that party may be required to afford neutral reasons for those challenges (Batson v Kentucky, 476 US 79 [1986]). A pattern of discrimination may arise where one party uses the challenges to exclude members of a cognizable racial group.
*787 Where one party initiates a challenge under Batson (supra) the court must engage in a three-step process (People v Payne, 88 NY2d 172 [1996]). First, the challenging party must assert that the opponent is exercising peremptory challenges in a discriminatory manner. If the trial court rules that a prima facie pattern of discrimination does exist then the burden will shift to the other party to provide neutral explanations for those challenges. This second step merely requires the party to provide reasons which are neutral, not necessarily reasons which are nondiscriminatory (People v Allen, 86 NY2d 101 [1995]). The third step arises when the challenger asserts that the proffered neutral explanations are a pretext masking discriminatory intent (People v Payne, supra). This last step requires the court to assess the neutral explanations and determine their credibility in light of the specific facts and circumstances surrounding the case (People v Yarbrough, 187 AD2d 475 [2d Dept 1992]).
In the case at bar, the defendant challenged the People’s use of peremptory challenges where the People exercised 8 out of their 11 challenges to exclude black women. The People argued that juror No. 12 of the first round of jury selection was Hispanic, not African-American, therefore, they had only excluded seven black women. In determining whether a prima facie showing of discrimination has been found to exist, the court must examine the number of strikes which were directed to one cognizable racial class. In this case it is irrelevant whether the People exercised seven or eight challenges against black women. In either case this court finds that a prima facie showing of discrimination has been met.
There are no fixed rules which will determine conclusively the existence of a prima facie case of discrimination (People v Childress, 81 NY2d 263 [1993]). However, a large number of strikes directed toward one cognizable racial group will raise an inference of discrimination. African-American women are a cognizable racial group for purposes of Batson (supra; People v Garcia, 217 AD2d 119 [2d Dept 1995]). Thus, 5 out of 8 strikes has been held to establish a prima facie case (People v Reed, 178 AD2d 666 [2d Dept 1991]), and 7 out of 11 has likewise been held sufficient (People v Bennett, 186 AD2d 812 [2d Dept 1992]; see also, People v Holmes, 213 AD2d 673 [2d Dept 1995]; People v Dalhouse, 240 AD2d 420 [2d Dept 1997]). Therefore, the People’s use of 7 (or 8) out of 11 strikes against black women would constitute a prima facie case of discrimination.
The burden then shifted to the People to provide race-neutral reasons for the strikes. The People responded that there had *788 been no prima facie showing of discrimination since they had consented to seating four African-American women on the jury. However, as the Court of Appeals has consistently stated “the constitutional violation is the exclusion of any blacks solely because of their race. If any blacks are so excluded, it is of no moment that the jury nevertheless contains a token number of blacks” (People v Jenkins, 75 NY2d 550, 559; see also, People v Bolling, 79 NY2d 317; People v Childress, supra).
The People then provided their explanations concerning the strikes against the last two women. The People stated that these women wore dress hats in the courtroom and were otherwise dressed in a respectable manner. They appeared middle class and reasonably intelligent. The People feared that these two women would “not relate” to the testimony of a young unemployed black girl who would be testifying as a key prosecution witness. The People maintained that these jurors could not associate themselves with the social background of the witness and would not be inclined to believe her testimony. The defendant argued that this explanation proffered was pretextual, designed to shield their discriminatory intent.
The final step now requires the court to make a determination concerning the explanations offered by the People in this case. The People’s explanation is essentially an attempt by them to convince the court that only jurors with the same employment status (or lack thereof) as a witness can effectively consider all the evidence in the case. While a juror’s employment status might be an appropriate race-neural reason for exclusion, it must be related to the facts of the case (People v Williams, 199 AD2d 445 [2d Dept 1993]; see, People v Rudd, 225 AD2d 710 [2d Dept 1996]; People v Duncan, 177 AD2d 187 [4th Dept 1992]). However, if the employment of the potential juror has no connection with the specific facts of the case then an exclusion of such a juror could constitute discrimination.
Thus, in People v Stiff (206 AD2d 235 [2d Dept 1994]), the Court held it was pretext to exclude a juror merely because the juror worked in an hierarchal and structural organization where that fact had no relation to the facts of the case. Similarly, it was held pretext for a juror to be excluded where the juror worked as an arts administrator for a school and there was no evidence that such employment related to the facts of the case (People v Payton, 204 AD2d 661 [2d Dept 1994]). Additionally, in People v Bennett (206 AD2d 382 [2d Dept 1994]), the Court held the challenge to a juror who worked for the Department of Maintenance Income and would be sym *789 pathetic to underprivileged defendants was held pretext where there was no indication how the juror would feel in this case. These cases represent the view that unless a juror’s employment is intimately connected to the facts of the case then exclusion based on that reason alone would not constitute a race-neutral explanation.
In the instant case, the People failed to articulate sufficient reasons to adequately convince the court that both jurors’ employment would prevent them from assessing the credibility of a key witness. The People seek to equate a juror’s employment as a basis for exclusion to specific types of employment. However, as already stated, specific types of employment must be connected to the facts of the case. Therefore, whether or not a juror is employed must likewise be sufficiently connected to the facts of the case to validate that the challenges were race-neutral. However, during voir dire the People never questioned those jurors concerning their employment or whether they would encounter problems attaching credibility to an unemployed witness (People v Jackson, 213 AD2d 335 [1st Dept 1995]). Moreover, the People never attempted to substantiate their claim that the clothing the jurors were wearing indicated a bias toward unemployed women. Without an adequate record supporting those assertions the People cannot connect their explanations to the facts of the case. The People’s bald assertion that these jurors could not fairly listen to the evidence was, therefore, merely a pretext for discrimination. Thus, those two jurors were seated as members of the jury.