*409 LIU, J.,
Concurring. — During jury selection, defendant Royce Lyn Scott objected to the prosecutor’s peremptory strike of Prospective Juror H.R., an African-American. (See Batson v. Kentucky (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] (Batson); People v. Wheeler (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748].) The trial court found no prima facie case of discrimination but invited the prosecutor to state his reason for striking H.R. The prosecutor cited H.R.’s “inconsistent answers on the death penalty,” and the trial court accepted that explanation as a valid race-neutral reason.
I agree that Scott’s Batson claim lacks merit. But I would reject the claim on the ground that substantial evidence supports the trial court’s ruling that the prosecutor offered a credible race-neutral explanation for striking H.R. Because the prosecutor stated a reason for the strike and the trial court-ruled on that reason, the first stage of the Batson inquiry — i.e., whether Scott made a prima facie showing of discrimination — is moot. (See People v. Banks (2014) 59 Cal.4th 1113, 1146 [176 Cal.Rptr.3d 185, 331 P.3d 1206]; People v. McKinzie (2012) 54 Cal.4th 1302, 1320 [144 Cal.Rptr.3d 427, 281 P.3d 412].)
Today’s opinion holds that the trial court’s first-stage ruling is not moot and denies Scott’s claim at the first stage without evaluating the prosecutor’s stated reason for striking H.R. (Maj. opn., ante, at pp. 386, 392.) In so doing, the court opts to resolve Batson’s inquiry into discriminatory purpose based on “needless and imperfect speculation” as to why the prosecutor might have struck H.R., even though “actual answers” to that question were stated by the prosecutor and evaluated by the trial court. (Johnson v. California (2005) 545 U.S. 162, 172 [162 L.Ed.2d 129, 125 S.Ct. 2410] (Johnson).) This approach cannot be reconciled with the Batson framework and risks weakening the constitutional prohibition on racial discrimination in jury selection.
Under today’s decision, when a prosecutor has stated a facially neutral reason that nonetheless reveals discrimination in light of all relevant circumstances, the Batson violation will evade appellate review so long as the trial court did not err in its first-stage ruling. This is readily illustrated by considering a variation on the facts of Snyder v. Louisiana (2008) 552 U.S. 472 [170 L.Ed.2d 175, 128 S.Ct. 1203] (Snyder), a case in which the high court concluded, upon a careful review of all relevant circumstances, that the prosecutor’s facially neutral explanation for a strike was in fact pretextual.
Suppose that during jury selection in a capital case involving a black defendant and a white victim, the prosecutor strikes a black prospective juror, and defense counsel objects. The trial court correctly finds no prima facie showing of discrimination because that juror was the only black juror struck among a handful of black jurors in the venire. The trial court nonetheless asks the prosecutor to explain the strike. She explains she struck the juror because *410 he is a student teacher and might rush through deliberations to avoid missing class if he served on the jury. (Snyder, supra, 552 U.S. at p. 478.) The trial court finds this facially neutral explanation to be credible. (Id. at p. 479.) On appeal, however, a proper third-stage analysis reveals that the prosecutor’s explanation was implausible: The trial would not have conflicted with the juror’s teaching obligations, and the prosecutor did not challenge similarly situated white jurors. (Id. at pp. 482-484.) Under today’s opinion, a reviewing court would simply affirm the trial court’s first-stage ruling. It would not examine whether the prosecutor’s facially neutral reason was supported by the record, nor would it conduct any comparative juror analysis. As a result, it would not evaluate whether the pretextual nature of the prosecutor’s stated reason, when considered with all other relevant circumstances, was sufficient to establish purposeful discrimination.
The court does not disagree that its approach mandates this result. Yet this result is plainly at odds with Batson. As the Third Circuit has explained, “to allow the absence of a prima facie case to be case dispositive when the record raises serious questions about the prosecutor’s motivations would defeat one of Batson’s principal purposes — to provide assurance to the defendant and the community that criminal judgments are not tainted by invidious discrimination. Where the record as a whole as ultimately developed permits a reasonable argument that the judgment is so tainted, the issue of taint must be resolved; it cannot be avoided by a finding that the defendant failed to present a prima facie case.” (Johnson v. Love (3d Cir. 1994) 40 F.3d 658, 665.)
Today’s decision founders on a key question: What role, if any, should the prosecutor’s stated reason play in appellate review of a first-stage Batson ruling? The court says “the fact that the prosecutor volunteered one or more nondiscriminatory reasons for excusing the juror is of no relevance at the first stage.” (Maj. opn., ante, at p. 390.) I agree. But today’s opinion goes on to say that a reviewing court, as part of the first-stage inquiry, must take a peek at the stated reason to determine whether it is “discriminatory on its face.” (Id. at p. 391.) If the stated reason is facially neutral and the first-stage ruling is correct, then the reviewing court must affirm without examining whether the reason is contradicted by the record or otherwise suspicious.
As both parties here agree, however, a prosecutor’s stated reason plays no role in the first-stage inquiry because the purpose of the first stage is only to determine whether the prosecutor must state a reason. When a prosecutor states a reason and a court inquires whether the stated reason is facially discriminatory, the analysis has necessarily moved past the first stage. Such inquiry properly occurs at Batson’s second stage, where the issue is whether the prosecution has carried its burden “to come forward with a neutral *411 explanation.” (Batson, supra, 476 U.S. at p. 97.) At that point, the analysis must take one of two paths: If the stated reason is discriminatory on its face, then a finding of purposeful discrimination is warranted. If the stated reason is facially neutral, then a court must proceed to Batson’s third stage and evaluate the reason “in light of all evidence with a bearing on it.” (Miller-El v. Dretke (2005) 545 U.S. 231, 252 [162 L.Ed.2d 196, 125 S.Ct. 2317] (Miller-El).) Such evidence may include record material that supports or undermines the stated reason, the prosecutor’s conduct of voir dire or pattern of strikes, the prosecutor’s acceptance of jury panels with varying compositions, comparative juror analysis, and other factors. (See Snyder, supra, 552 U.S. at pp. 479-485; Miller-El, at pp. 241-266.) The third-stage inquiry will also take into account the evidence that was found insufficient to establish a prima facie case at the first stage.
Today’s opinion scrambles this clear and well-established procedure. According to the court, the second-stage inquiry into whether the prosecutor has stated a facially neutral reason may backwardly inform the first-stage inquiry into whether there is an inference of discriminatory purpose requiring the prosecutor to state a reason at all. (Maj. opn., ante, at p. 391 [“A proffered justification that is facially discriminatory must be weighed with the totality of the relevant facts to determine whether they give rise to an inference of discriminatory purpose”]; id. at p. 392 [“facially discriminatory justification advanced by the prosecutor” at the second stage “would almost certainly [(almost certainly?)] raise an inference of discrimination” at the first stage].) Further, the court says, if the stated reason is facially neutral and the first-stage ruling is correct, then appellate review must come to an end and ignore the trial court’s third-stage ruling — regardless of whether the stated reason is supported by the record, whether the prosecutor struck other similarly situated jurors, or whether other aspects of jury selection suggest unlawful bias. This approach — requiring a peek, but only a peek, at the prosecutor’s stated reason — falls short of the fulsome analysis Batson requires to identify purposeful discrimination and ensure “public confidence in the fairness of our system of justice.” (Batson, supra, 476 U.S. at p. 87.)
The court says its approach balances several objectives: (1) discovering and remedying discrimination, (2) preserving the use of unexplained peremptory challenges, and (3) encouraging the development of a record that will allow for efficient resolution of Batson claims on appeal. (Maj. opn., ante, at pp. 388-389.) As to the first two objectives, the Batson framework already reflects a balance that we are not free to redraw. (See Batson, supra, 416 U.S. at pp. 98-99 [“While we recognize, of course, that the peremptory challenge occupies an important position in our trial procedures, we do not agree that our decision today will undermine the contribution the challenge generally makes to the administration of justice.”].)
*412 As to the third objective, today’s opinion speculates that if reviewing courts deem the first stage moot and proceed to the third stage in this circumstance, trial courts “may be discouraged from ever making the threshold determination whether a prima facie case exists,” and “prosecutors will not want to jeopardize the favorable [first-stage] ruling by placing their reasons on the record.” (Maj. opn., ante, at p. 389.) Such a rule, the court fears, may result in situations where an appellate court overturns the trial court’s first-stage ruling and must remand for a Batson hearing many years after trial.
Although these are plausible concerns, they do not provide a complete account of the incentives at work. If a trial court finds no prima facie case of discrimination, the prosecutor can choose to stand pat on that ruling. Or the prosecutor can choose to state a reason in order to create a record that will better support affirmance on appeal, to rebut a perceived affront to his or her fairness, or to promote transparency and confidence in the justice system. If the prosecutor decides to state a reason and the trial court finds it credible, the trial court’s third-stage ruling is entitled to “ ‘much deference’ ” on appeal. (Snyder, supra, 552 U.S. at p. 479; see id. at p. 477.)
Under any of these scenarios, the prosecutor is exposed to little risk. As I have previously documented, in more than 100 cases presenting Batson issues over the past 24 years, this court has never found first-stage error on appellate review, and it has only once found third-stage error (in an obvious case). (See People v. Chism (2014) 58 Cal.4th 1266, 1352 [171 Cal.Rptr.3d 347, 324 P.3d 183] (cone. & dis. opn. of Liu, J.); People v. Harris (2013) 57 Cal.4th 804, 885 [161 Cal.Rptr.3d 364, 306 P.3d 1195] (cone. opn. of Liu, J.).) Because our case law shows no sign of overenforcing Batson — that is, finding violations where stated reasons are actually nondiscriminatory — it is hard to say that a mootness rule would pose much if any disincentive for prosecutors to state reasons where the reasons are actually nondiscriminatory.
Moreover, in worrying about cases where an appellate court ends up overturning the trial court’s first-stage ruling, today’s opinion focuses on situations where a prosecutor has good reason not to stand pat on the first-stage ruling. In such cases, the vulnerability of the first-stage ruling is, in all likelihood, already apparent when rendered by the trial court, and the prosecutor has a strong incentive to put the matter to rest by stating a reason for the record. That reason will be evaluated by the same trial court that already found no prima facie case of discrimination, and the trial court’s credibility finding will be afforded deference on appeal. Moreover, even when the first-stage inquiry is moot on appeal, any weakness in the evidence of discrimination at the first stage will factor into the third-stage determination of whether the defendant has carried his “ultimate burden of persuasion *413 regarding racial motivation.” (Purkett v. Elem (1995) 514 U.S. 765, 768 [131 L.Ed.2d 834, 115 S.Ct. 1769].) Thus, the marginal effect of the mootness rule in dissuading prosecutors from volunteering reasons is likely to be minimal in cases where a trial court’s first-stage mling is questionable. The marginal effect may be greater in cases where a trial court’s first-stage mling is solid, but those are cases where the trial court’s first-stage ruling is virtually certain to be affirmed — i.e., cases where the prosecutor’s refusal to state a reason is fully justified.
Of course, “the prospect that a strike motivated by unlawful bias could evade full review arises any time a trial court terminates the BatsonlWheeler inquiry at the first stage” (Maj. opn., ante, at p. 389.) But that is not a reason for reviewing courts to dispense with the usual and complete inquiry into unlawful bias when the prosecutor has stated a reason and the trial court has found it credible. Speculative concerns about prosecutorial incentives do not justify today’s tmncated approach, which insulates facially neutral reasons from appellate review. When “actual answers” have been stated by the prosecutor and evaluated by the trial court, “[t]he inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation . . . .” (Johnson, supra, 545 U.S. p. 172.) A reviewing court should not resolve a Batson claim by hypothesizing reasons for a strike, as the court does today (maj. opn., ante, at p. 385), when it can readily examine the actual reason stated by the prosecutor and upheld by the trial court.
The plurality’s reasoning in Hernandez v. New York (1991) 500 U.S. 352 [114 L.Ed.2d 395, 111 S.Ct. 1859] (Hernandez) is persuasive. Although the trial court in Hernandez had skipped the first stage altogether, there is no indication that that fact played a role in the plurality’s mootness analysis. The plurality explained by analogy to title VII employment discrimination cases that “ ‘[w]here the [employer] has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.’ ” (500 U.S. at p. 359 (plur. opn. of Kennedy, J.).) It then made clear that “the same principle applies under Batson“Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has mled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.” (Ibid. (plur. opn. of Kennedy, J.).)
The court today says: “Because Hernandez explicitly found ‘no error’ when the New York appellate courts began their analysis with the trial court’s first-stage mling (Hernandez, supra, 500 U.S. at p. 372 (plur. opn. of Kennedy, J.)), we are confident that our analytical model falls within the *414 discretion granted us by Batson and Johnson.” (Maj. opn., ante, at p. 394.) But Hernandez'& finding of “no error” expressed nothing beyond agreement with the state courts’ conclusions on the merits of the Batson claim: “[T]he prosecutor offered a race-neutral basis for his exercise of peremptory challenges,” and “[t]he trial court did not commit clear error in choosing to believe the reasons given by the prosecutor.” (Hernandez, at p. 372.) Indeed, in the sentence immediately following its finding of “no error,” the plurality reiterated that the first-stage inquiry had been “unnecessary” on appeal. (Ibid.) Moreover, because Hernandez was a case where the courts at all levels proceeded to a third-stage ruling, it provides no reason to be “confident” (maj. opn., ante, at p. 394) that a reviewing court may end the inquiry at the first stage without fully analyzing the prosecutor’s stated reason. The high court in Hernandez had no occasion to consider that scenario, which is what we have here.
Today’s opinion puts this court at odds with the majority of state high courts and federal circuit courts that have considered the issue, many of which have read Hernandez as I do. (See Manning v. State (Miss. 1998) 726 So.2d 1152, 1183, overruled on another ground in Weatherspoon v. State (Miss. 1999) 732 So.2d 158 [quoting Hernandez and concluding that because trial court ruled on prosecutor’s stated reason, “the issue of whether a prima facie showing was made is moot”]; State v. Williams (2002) 355 N.C. 501 [565 S.E.2d 609, 638-639] [quoting Hernandez and concluding that because trial court ruled on validity of prosecutor’s explanations, “ ‘the only issue for us to determine is whether the trial court correctly concluded that the prosecutor had not intentionally discriminated’ ”]; Malone v. State (Tex.Crim.App. 1996) 919 S.W.2d 410, 412 [quoting Hernandez and stating that “we, like the Supreme Court, will not review the issue of whether the defendant established a prima facie case where the prosecutor has articulated reasons for the contested peremptory strike and the trial judge has ruled on the ultimate question of intentional discrimination”]; Johnson v. Love, supra, 40 F.3d at p. 665; U.S. v. Castorena-Jaime (10th Cir. 2002) 285 F.3d 916, 928; see also Stubbs v. Gomez (9th Cir. 1999) 189 F.3d 1099, 1104-1105 [on federal habeas corpus review, prosecutor’s stated reasons and federal district court’s ruling on those reasons rendered first-stage inquiry moot even though state court determined there was no prima facie showing]; People v. Boyette (2002) 29 Cal.4th 381, 469-470 [127 Cal.Rptr.2d 544, 58 P.3d 391] (dis. opn. of Kennard, J.) [citing cases from intermediate state appellate courts holding that trial court’s ruling on prosecutor’s stated reasons renders the first stage moot, despite first-stage ruling that there was no prima facie showing].) Tallying authority is of course no substitute for legal reasoning. But the number of jurisdictions that treat the first stage as moot under these circumstances — and have long done so — casts doubt on the practical concerns emphasized in today’s opinion.
*415 The court dismisses these non-California decisions as a “handful of cases.” (Maj. opn., ante, at p. 393.) Apart from our own inconsistent precedent, today’s opinion cites an unpublished disposition (U.S. v. Ervin (6th Cir. 2008) 266 Fed. Appx. 428, 432-433), an opinion explicitly distinguishing mootness procedures on habeas corpus from those on direct review (Sorto v. Herbert (2d Cir. 2007) 497 F.3d 163, 175, fn. 9), one sentence of dicta (State v. Joe (La.Ct.App. 1996) 678 So.2d 586, 591), a decision from an intermediate state appellate court that is contradicted by another division of the same court (compare People v. Bruton (N.Y.App.Div. 2002) 290 A.D.2d 231 [735 N.Y.S.3d 759], with People v. Dalhouse (N.Y.App.Div. 1997) 240 A.D.2d 420 [658 N.Y.S.2d 408, 410]), a case in which the trial court made no third-stage ruling (Brawner v. State (Miss. 2004) 872 So.2d 1, 10-11), and a single relevant state high court opinion (State v. Sledd (1992) 250 Kan. 15 [825 P.2d 114, 119]). If the cases I have cited are a mere handful, then the pertinent non-California authority cited by the court could fit in a thimble.
Because the first-stage inquiry is moot, I would analyze Scott’s Batson challenge at the third stage. H.R.’s responses on the juror questionnaire indicated that he simultaneously held four inconsistent attitudes about the death penalty. When asked about these attitudes during voir dire, H.R. did little to clarify his views. In light of H.R.’s written and oral responses, the trial court had ample basis to credit the prosecutor’s facially neutral explanation for striking H.R. Comparative juror analysis does not aid Scott’s claim. No other prospective juror expressed death penalty views as inconsistent or confusing as H.R.’s.
In sum, I would reject Scott’s Batson claim as to H.R. at the third stage rather than the first stage. In all other respects, I join the court’s opinion.
Kruger, J., concurred.
Appellant’s petition for a rehearing was denied July 15, 2015.