OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Determining whether a party has exercised peremptory challenges to strike potential jurors for reasons that implicate equal protection concerns is described as a three-step process
 
 (Batson v Kentucky,
 
 476 US 79, 96-98;
 
 Hernandez v New York,
 
 500 US 352, 358,
 
 affg
 
 75 NY2d 350). First, the defendant must allege sufficient facts to raise an inference that the prosecution has exercised peremptory challenges for discriminatory purposes.
 
 [1]
 
 Second, if the requisite showing has been made, the burden shifts to the prosecution to articulate a neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the proffered reasons are pretextual
 
 (Hernandez,
 
 500 US, at 358-359).
 

 In this appeal, defendant alleges that the People failed to meet their burden under step two because they did not show that the neutral reasons they advanced for striking some men were consistently applied to women jurors who were seated. The Appellate Division, in concluding that the People were obligated to make such a showing as part of step two, applied an incorrect legal standard.
 

 Facts
 

 During voir dire at defendant’s trial for incest and sexual abuse, the prosecutor exercised 14 of her 15 peremptory challenges against male jurors and defense counsel exercised all 15 peremptory challenges against female jurors. The jury ultimately consisted of five men and seven women.
 

 Defendant moved for a mistrial, alleging that the prosecutor’s peremptory challenges had been used in a discriminatory manner, to strike potential jurors solely because of their gender. The People offered to provide neutral explanations for their challenges, but the trial court summarily denied defendant’s motion. On appeal, the Appellate Division held that defendant had established a prima facie case of discrimination
 
 *105
 
 under
 
 Batson v Kentucky
 
 (476 US 79,
 
 supra),
 
 that the burden shifted to the People to provide gender-neutral explanations, and that the trial court erred in summarily denying a mistrial without requiring the People to offer neutral reasons. The matter was remanded to afford that opportunity
 
 (see, People v Allen,
 
 199 AD2d 781).
 

 The hearing, held before the original Trial Judge nearly two years after verdict, was limited to the inquiry identified by the Appellate Division: permitting the prosecutor to provide gender-neutral reasons for her challenge to the 14 men. All parties, and the court, had reviewed the voir dire minutes. Defense counsel was allowed, after each explanation, to state any challenges to the reason given. As to 12 of the 14, defense counsel either expressed no quarrel with the reason given or questioned only the reasonableness of the prosecutor’s belief that the juror harbored bias.
 

 As to four of the 12, the prosecutor explained that their responses to inquiries revealed actual bias against children as credible witnesses in a case involving child sexual abuse. One, for example, stated his belief that children could provoke their own sexual abuse. Another showed sympathy toward sexual offenders as suffering from an illness that caused their conduct. A third stated that children often "blow out of proportion” sexual experiences with adults. The fourth believed child sexual abuse was a "family problem,” only rarely a criminal matter.
 

 Another four, according to the prosecutor, revealed personal circumstances that caused her concern about possible bias in favor of defendant or against children. One juror was childless, a circumstance the prosecutor said she believed would make it difficult for him to assess a case involving a relationship between father and daughter. Another was estranged from his own children. A third was involved in a bitter divorce and custody dispute; the prosecutor said that in her view false allegations of child sexual abuse most frequently arose in that context. The fourth was a school bus driver and custodian, and while he had never actually been the target of complaints, the trial court agreed that he showed skepticism about the veracity of children’s complaints against adults.
 

 Four more of the potential jurors, according to the prosecutor, had hostile associations with the Assistant District Attorney or friendly associations with defense counsel or his relatives. A thirteenth was a neighbor of the defendant. A
 
 *106
 
 fourteenth potential juror was struck because he did not seem, in the prosecutor’s view, to be sufficiently assertive. The last peremptory was used against a woman whose son was being prosecuted by the District Attorney’s office.
 

 As to two of the explanations given by the prosecutor — the insufficiently assertive male juror and a juror who was in a bowling league with defense counsel — defense counsel argued that the prosecutor had failed to strike female jurors with similar characteristics. To both of those challenges, the prosecutor responded with additional reasons why she had retained the female jurors. Unlike the soft-spoken women jurors identified by defense counsel, the unassertive male juror was in line to be foreperson. The woman who ultimately became foreperson was, according to the prosecutor, assertive and confident in her answers.
 

 Counsel also disputed whether a prior association with his office had been evenly invoked as a reason for striking venirepersons, claiming "many” women on the panel knew defense counsel but had been seated. The prosecutor disputed this characterization, stating only one female juror fell into that category, a woman who said that defense counsel had represented her. That woman, however, was also a neighbor of a member of the District Attorney’s staff, who had told the trial assistant he thought she would be a good juror. Defendant identified no other women seated as jurors despite an association with defense counsel or defendant.
 

 For each of the strikes, the court found that the prosecutor had given a gender-neutral reason, concluding that defendant had failed to demonstrate discrimination by the prosecutor in exercising peremptory challenges.
 

 On appeal, defendant contended that "a number” of the reasons advanced by the prosecution were pretextual, and he had therefore "carried his burden of proving discrimination.” The Appellate Division articulated the following standard of review:
 

 "Although the 'gender neutral’ (or 'race neutral’) reason for exercising a peremptory challenge need not rise to the level of a challenge for cause
 
 (see, People v Hernandez,
 
 75 NY2d 350, 357,
 
 affd
 
 500 US 352), it must be legitimate and not merely a pretext
 
 for
 
 discrimination
 
 (see, J.E.B. v Alabama ex rel. T.B.,
 
 [511] US —, 128 L Ed 2d 89, 107). To determine whether the stated reasons are, in fact,
 
 *107
 
 legitimate and sufficient to rebut defendant’s prima facie showing, the trial court must 'undertake "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available” ’
 
 (Batson v Kentucky, supra,
 
 at 93, quoting
 
 Arlington Hgts. v Metropolitan Hous. Dev. Corp.,
 
 429 US 252, 266), including information gleaned from the voir dire conducted of other prospective jurors with respect to whom challenges were not exercised.” (206 AD2d 593.)
 

 The court concluded that, in order to rebut a defendant’s prima facie showing, the People were required to demonstrate not only that gender-neutral reasons existed for the challenged male jurors but also that those same neutral reasons had been evenly applied to female jurors who exhibited the purportedly objectionable characteristic. Failure to provide an explanation for such a discrepancy was "a strong indication that the reason furnished was not the true basis for the strike” (206 AD2d, at 593).
 

 In considering defendant’s claim that the prosecutor’s gender-neutral reasons were not applied equally to women, and were therefore pretextual, the Appellate Division reviewed both the evidence adduced at the
 
 Batson
 
 hearing and the voir dire minutes. On its own reading the court discerned that
 

 "the prosecutor claimed to have struck one male juror because he was unmarried and had no children, yet she failed to use a peremptory challenge to remove a young woman who was also unmarried and apparently childless. Another man was purportedly removed because he knew the defense attorney, and a third because of his familiarity with an attorney (Robert Douglas) who had been associated with the prosecutor’s office and because his cousin was an attorney.
 

 "Challenges were not, however, exercised to strike women, despite their associations with Douglas or the defense attorney — one woman who was ultimately seated on the jury had employed defendant’s attorney just three years previously — and despite the fact that they admitted having lawyers as close relatives. And finally, although a male was removed solely because he was divorced, one of the women on the panel, who had stated that
 
 *108
 
 she was not married but had children, was not even questioned as to her marital status and went unchallenged by the People.” (206 AD2d, at 594.)
 

 From this perceived uneven application of the People’s stated rationale for striking the male jurors while seating females, the Appellate Division concluded, "it must be presumed that these factors were simply employed to mask a true intention to exclude from the jury as many men as possible.” The defendant’s ultimate burden of proving discriminatory intent was met because the People, in response to a prima facie showing of discrimination, did not give satisfactory explanations for challenges that appeared to have been based on gender.
 

 Two Justices dissented, concluding that the majority had improperly imposed a new standard of proof for the second stage of the
 
 Batson
 
 hearings. We agree and therefore reverse.
 

 Analysis
 

 Jury service — a privilege and duty of citizenship — is a civil right established by our Constitution (NY Const, art I, §§ 1, 11; Civil Rights Law § 13) and a fundamental means of participating in government
 
 (People v Kern,
 
 75 NY2d 638, 651-652,
 
 supra).
 
 While generalizing about people’s traits in order to predict their bias as jurors may be integral to the art of jury selection, there are limits to that practice. Elimination of a potential juror because of generalizations based on race, gender or other status that implicates equal protection concerns is an abuse of peremptory strikes
 
 (Batson v Kentucky,
 
 476 US 79,
 
 supra; J.E.B. v Alabama ex rel. T.B.,
 
 511 US —, 128 L Ed 2d 89).
 

 The Criminal Procedure Law permits both sides to challenge, for cause, the selection of a potential juror if it can be shown that bias may prevent that juror from deciding the case impartially (CPL 270.20 [1] [a]-[f|). A peremptory challenge, in contrast, "is an objection to a prospective juror for which no reason need be assigned” (CPL 270.25 [1]). The number of peremptory strikes afforded the parties is determined by statute, based upon the degree of the crime charged (CPL 270.25 [2]). In this case both defendant and the People were
 
 *109
 
 entitled to 15 peremptory challenges for regular jurors and two for alternates (CPL 270.25 [2] [b]).
 
 [2]
 

 We begin by setting out the legal standards for assessing a claim of discrimination under
 
 Batson.
 

 Since a party need give no reason at all for exercise of a peremptory challenge, the initial burden logically falls on the party opposing the strike to make out a prima facie case that a juror has been excused for an impermissible reason — step one of the
 
 Batson
 
 inquiry. As the Appellate Division concluded in defendant’s first appeal, defendant here met that burden when he protested the prosecutor’s use of 14 peremptory challenges to strike men
 
 (see,
 
 199 AD2d 781).
 
 [3]
 
 The burden of going forward then shifted to the People to overcome the inference of purposeful discrimination — step two of the inquiry.
 

 At this stage, if the prosecutor offers no explanation, the defendant has succeeded in meeting the ultimate burden of establishing an equal protection violation. If, however, the prosecutor offers facially neutral reasons supporting the challenge, the inference of discrimination is overcome
 
 (Batson,
 
 476 US, at 96-98). Determination whether the People’s proffered reasons meet their burden is a question of law: assuming the proffered reasons for the peremptory challenges are true, do the challenges violate the Equal Protection Clause?
 
 (See, Hernandez,
 
 500 US, at 359.)
 

 The explanation offered need not rise to the level for sustaining a challenge for cause
 
 (Batson,
 
 476 US, at 97). As the Supreme Court recently held as a matter of Federal constitutional law, step two is met by offering any facially neutral reason for the challenge — even if that reason is ill-founded— so long as the reason does not violate equal protection
 
 (Purkett v Elem,
 
 514 US —, 131 L Ed 2d 834 [May 15, 1995] [challenge based on unkempt hair of juror a neutral reason]). The second
 
 *110
 
 step "does not demand an explanation that is persuasive, or even plausible. 'At this [second] step of the inquiry, the issue is the facial validity of the prosecutor’s explanation. Unless a discriminatory intent is inherent in the prosecutor’s explanation, the reason offered will be deemed race neutral’ ”
 
 (Purkett,
 
 131 L Ed 2d, at 839,
 
 supra,
 
 quoting
 
 Hernandez,
 
 500 US, at 360).
 

 When defendant challenges as pretextual the People’s explanation as to a particular juror, the inquiry has become factual in nature and moves to step three. Unlike step two, step three permits the trial court to resolve factual disputes, and whether the prosecutor intended to discriminate is a question of fact
 
 (Hernandez,
 
 500 US, at 364-365). If after inquiry the trial court concludes that a proffered reason is pretextual, defendant has met his or her ultimate burden of proving intentional discrimination
 
 (Hernandez,
 
 500 US, at 363-364).
 

 Applying these legal principles here, we conclude that the Appellate Division erred in concluding the prosecution failed to satisfy its burden of going forward under step two.
 

 As to each of the challenged male jurors, the People offered reasons that were gender neutral, reasonably specific and trial related
 
 (Batson,
 
 476 US, at 98). Bias against children or preconceptions about child sexual abuse were reasons to strike potential jurors in this case. Familiarity with either the defense or prosecution was, similarly, a facially neutral reason for striking jurors. If credited, these reasons did not violate equal protection, and were therefore sufficient as a matter of law to rebut the threshold showing of discrimination
 
 (Hernandez,
 
 500 US, at 359).
 

 Defendant’s claim that these reasons were pretextual rests on his allegation that the gender-neutral reasons offered at the
 
 Batson
 
 hearing were not applied equally to exclude women from the jury who exhibited the same characteristic. That circumstance is among the factors we have identified as raising an inference of discrimination
 
 (People v Bolling,
 
 79 NY2d 317, 324,
 
 supra).
 
 Apparently uneven application of neutral factors may not always indicate pretext, however, but simply an incomplete understanding of the full reasons for the prosecutor’s decision to seat some jurors while challenging others. For that reason, where counsel has perceived something suggesting a discriminatory motive in the questioning of a prospective juror, we require that those concerns be fully
 
 *111
 
 articulated to the trial court during its factual inquiry
 
 (People v Childress,
 
 81 NY2d 263, 269).
 

 Here, however, defendant failed during the
 
 Batson
 
 colloquy to articulate the basis for his present claim. At the outset of the hearing, the parties recognized that its purpose was to afford the prosecution an opportunity to come forward with gender-neutral reasons for its peremptory strikes (step two of the process). That step does not as a rule require the People to state reasons why jurors were seated, only why certain jurors were challenged. As a matter of law, the People’s explanations were sufficient to meet their burden under step two and defendant made no allegation that those reasons were pretextual,
 
 except in two instances:
 
 the soft-spoken juror, and the juror who had been represented by defense counsel. For each of those persons, the prosecutor responded with additional reasons why, despite the shared characteristic, other factors had led her to believe the seated juror in question would be a good juror.
 

 Because defendant raised no claim of pretext (as now alleged) with respect to any other juror, no fact question ever arose and the trial court properly ruled that defendant’s ultimate burden of proof was not satisfied. The procedure defendant espouses, and the Appellate Division applied — requiring the People at step two to state neutral reasons for its strikes as well as for seated jurors who might have similar qualities — improperly placed the burden on the People to show that they did not engage in intentional discrimination. That legal standard was error.
 

 Accordingly, the order of the Appellate Division should be reversed and the matter remitted to that court for consideration of the facts (CPL 470.25 [2] [d]; 470.40 [2] [b]).
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed and case remitted to the Appellate Division, Third Department, for further proceedings in accordance with the opinion herein.
 

 [1]
 

 . For ease of reference, this writing assumes that the defendant is the party claiming the People’s abuse of peremptory challenges, as was the fact in the case before us, though the analysis applies as well to the People’s claim of abuse
 
 (see, e.g., People v Kern,
 
 75 NY2d 638).
 

 [2]
 

 . Controversy continues about whether peremptory strikes — a creature of statute and the source of considerable recent litigation — should be reduced in number
 
 (see,
 
 Report of The Jury Project, at 65-66 [Mar. 31, 1994]) or abolished altogether
 
 (see, e.g., Batson,
 
 476 US, at 106-108 [Marshall, J., concurring];
 
 People v Bolling,
 
 79 NY2d 317, 325 [Bellacosa, Wachtler and Titone, JJ., concurring]). At least for now, they remain part of the strategic arsenal of trial lawyers.
 

 [3]
 

 . The fact that defendant himself used all his peremptory challenges against women would not justify retaliatory strikes against men by the People
 
 (People v Mitchell,
 
 80 NY2d 519, 530). The proper response to abuse of peremptory challenges is an objection
 
 (People v Kern,
 
 75 NY2d, at 643).