[636 NYS2d 370]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT GARCIA, Appellant.

Second Department, December 29, 1995

---

APPEARANCES OF COUNSEL

*Ellis & Associates,* New York City *(Robert J. Ellis, Jr.,* of counsel), for appellant.

*Charles J. Hynes, District Attorney* of Kings County, Brooklyn *(Roseann B. MacKechnie, Ruth E. Ross* and *Gerard J. McEnroe* of counsel), for respondent.

## OPINION OF THE COURT

HART, J.

The issue to be decided on this appeal is whether black females are protected from being peremptorily challenged on a discriminatory basis under *Batson v Kentucky* (476 US 79) and *People v Allen* (86 NY2d 101). We conclude that they are.

The defendant was charged with attempted murder in the second degree, assault in the second degree, criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, reckless endangerment in the first degree, and endangering the welfare of a child. The incident arose out of an altercation between two groups during which Irving Molina was shot. The defendant was ultimately convicted of criminal possession of a weapon in the third degree.

### I.

During the first round of jury selection, the defense counsel challenged the prosecutor's motives in using his peremptory challenges to excuse 2 of the 5 black female venirepersons pursuant to *Batson v Kentucky (supra).* The court refused to sustain the *Batson* challenge after noting that such a challenge could succeed only if all blacks, as opposed to just black females, were disproportionately challenged.

During the second round of voir dire, the prosecutor exercised peremptory challenges against 4 of the 6 black female venirepersons, and against 1 of the 4 black males on the 16-person panel. The defense counsel raised a *Batson* claim to the prosecutor's challenge of 3 black females. However, the defense

counsel failed to raise a *Batson* claim with respect to the fourth challenge, which was against juror number 15, a black female, and therefore, any objection to this challenge is unpreserved for appellate review *(see,* CPL 470.05; *People v Barnes,* 198 AD2d 289, 290-291). The court, in finding that only blacks in general, and not black females, constitute a cognizable category for a *Batson* challenge, refused to entertain the challenge.

In the aggregate, after completion of two 16-person voir dire rounds, a total of 5 of the 11 black female venirepersons had been peremptorily challenged by the prosecutor.

## II.

In selecting a jury, there is a per se proscription against using peremptory challenges in a discriminatory manner for the purpose of precluding a prospective juror based on race, gender, or other status *(see, People v Allen,* 86 NY2d 101, *supra)* from serving on a jury.

Equal protection concerns arise from the constitutional right of a citizen to sit as a juror and to participate in the administration of justice. This right is protected under the Equal Protection Clause of the Fourteenth Amendment *(see, Batson v Kentucky,* 476 US, *supra,* at 84). In addition, the United States Supreme Court, in focusing on the question of the harm sustained from discriminatory jury selection, extended the definition of discriminatory jury selection "beyond that inflicted on the * * * excluded juror to touch the entire community" *(Batson v Kentucky, supra,* at 87), by impairing the integrity of the jury trial process *(see, People v Kern,* 75 NY2d 638, 652, *cert denied* 498 US 824).

The Court of Appeals characterized the limits of permissible peremptory challenging as follows: "While generalizing about people's traits in order to predict their bias as jurors may be integral to the art of jury selection, there are limits to that practice. Elimination of a potential juror because of generalizations based on race, gender or other status that implicates equal protection concerns is an abuse of peremptory strikes" *(People v Allen,* 86 NY2d 101, 108, *supra).*

The process for determining whether or not peremptory challenges to potential jurors has raised constitutional questions based on equal protection concerns is a three-step process *(see, Batson v Kentucky, supra,* at 96-99). Initially, the party that raises the challenge must make out a prima facie showing that challenges have been exercised on a "purposefully discriminatory" basis. The *Batson* challenge can be raised even though a

defendant is not a member of the challenged class *(see, Powers v Ohio,* 499 US 400, 410-414; *People v Mathews,* 201 AD2d 588).

After the movant has sustained his showing, the burden shifts to the party that has excluded the prospective jurors to then come forward with nonpretextual neutral explanations for exercising those challenges. The court must then determine if the explanations pass muster as being nondiscriminatory.

Challenges based on race *(see, Batson v Kentucky,* 476 US 79, *supra; People v Kern, supra)* or gender *(see, J.E.B. v Alabama ex rel. T.B.,* 511 US —, 114 S Ct 1419; *People v Allen,* 86 NY2d 101, *supra)* have implicated equal protection concerns triggering the three-prong *Batson* test; however, the inquiry does not end with race and gender. The threshold question that must be answered before the *Batson* test is triggered is whether or not a class of jurors exists.

In the case at bar, by ruling that black females do not have such a status, the trial court precluded full inquiry as to whether the *Batson* test should be applied. To accept the trial court's ruling would mean that black females are subject to challenge merely because they are black females and, therefore, without protection of their right to participate in the administration of justice. Such a proposition is clearly violative of equal protection rights.

Accordingly, the defense counsel is entitled to an opportunity to make out a prima facie *Batson* showing. If such a showing is made out, the prosecutor should be afforded the opportunity to supply nondiscriminatory reasons for the challenges, i.e., reasons other than the fact that the struck jurors were black females. The matter is remitted to the Supreme Court, Kings County, to hear and report on the defendant's prima facie showing on his *Batson* challenge, and if the prima facie showing is sustained, then to hear and report on the prosecutor's exercise of peremptory challenges, and the appeal is held in abeyance in the interim. The Supreme Court is to file its report with all convenient speed.

BRACKEN, J. P., BALLETTA and COPERTINO, JJ., concur.

Ordered that the matter is remitted to the Supreme Court, Kings County, to hear and report on the defendant's prima facie showing on his *Batson* challenge, and if the prima facie showing is sustained, then to hear and report on the prosecutor's exercise of peremptory challenges, and the appeal is held in abeyance in the interim. The Supreme Court is to file its report with all convenient speed.