■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM WOOLEY, Appellant. [671 NYS2d 58] —Judgment, Supreme Court, Bronx County (Roger Hayes, J.), rendered February 7, 1996, convicting defendant, after trial by jury, of two counts of sodomy in the first degree, promoting prison contraband in the first degree, and two counts of coercion in the first degree, and sentencing him to concurrent terms of 7 to 21 years on the sodomy convictions, and 2⅓ to 7 years on each additional conviction, to run consecutively to a prison term already being served by defendant, unanimously affirmed.

Wayne R., a 19-year-old inmate at Rikers Island Adolescent Detention Center, was forced by a group of inmates to commit oral sodomy upon Anthony F., who was also incarcerated at

Rikers. Defendant, another inmate at the Detention Center, was charged with acting in concert with others to force Wayne to commit fellatio upon an unwilling Anthony under threats that they both would be slashed with boxcutters if they did not perform as directed. Defendant was convicted by a jury of two counts of sodomy in the first degree, promoting prison contraband in the first degree and two counts of coercion in the first degree. Defendant claims that the evidence against him was insufficient and the verdict of the jury against the weight. of the evidence; that the court erred in finding that a photo array containing defendant's photograph was not unduly suggestive; that the court erred in permitting evidence regarding a prompt outcry made by telephone by one of the victims, since the prison telephone log book, which would have contained an entry of such call, was lost or destroyed; and that various alleged errors by the court in ruling on the scope of examination of witnesses and instructing the jury deprived the defendant of a fair trial.

Initially, we note that the defendant's sufficiency and weight of the evidence claims are really issues going to the credibility of the prosecution witnesses. Defendant points out differences in the stories told by Wayne and Anthony as between the two of them and internal inconsistencies in their own narrations. Defendant also points out contradictions to the complainants' stories in the testimony of correction officers.

However, at trial, the two main witnesses, Wayne and Anthony, gave generally convergent testimony about the occurrence, providing details about how they were threatened with cutting if Wayne did not put Anthony's penis in his mouth. Wayne's mother also testified that Wayne called her on the day of the incident telling her what happened. The jury also heard another inmate, Holloway, who was in the cell next to Wayne's, heard a commotion in that cell and was told of the incident by Wayne that same day. There was also evidence from two correction officers who had investigated the incident. The eyewitness testimony from Wayne and Anthony, who both knew defendant from the cell block, and the corroborating testimony of Wayne's prompt outcry from his mother and a fellow inmate, together with the testimony of the investigators, were enough to provide the jury with overwhelming evidence of guilt (*People v Johnson*, 57 NY2d 969, 971).

The inconsistencies are specifically raised for the first time on appeal by the defendant. They relate to issues such as how well Anthony and Wayne knew each other; the time of day that the incident occurred; whether or not the cell door was open or closed; whether or not Anthony, who was grabbed by

the neck, actually saw the boxcutter weapon; how long the forced fellatio lasted; and whether or not Anthony saw a correction officer after the sodomy. The "core" narrative, however, of Wayne being forced by defendant and others to commit fellatio on Anthony, also against his will, remained unvaried. Only minor and collateral issues, as noted above, were recounted by the unwilling participants with some inconsistencies.

Since the present specific sufficiency claims were not raised when the defendant moved for dismissal at trial, the issues have not been preserved for appellate review (CPL 470.05 [2]; *People v Gray*, 86 NY2d 10). In any event, these inconsistencies, which did not negate the core of the testimony, were placed before the jury for their consideration, and the record contains evidence which supports their verdict. "In reviewing the evidence [an appellate court is] obliged to do so in the light most favorable to the People (*People v Kennedy*, 47 NY2d 196) bearing in mind that credibility is a matter to be determined by the trier of the facts (*People v Parks*, 41 NY2d 36, 47)." (*People v Malizia*, 62 NY2d 755, 757, *cert denied* 469 US 932.) "Even if all the elements and necessary findings are supported by some credible evidence, the court must examine the evidence further. If based on all the credible evidence a different finding would not have been unreasonable, then the appellate court must, like the trier of fact below, 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' (*People ex rel. MacCracken v Miller*, 291 NY 55, 62; *compare, People v Smith*, 63 NY2d 41, 52; *see also*, Cohen and Karger, Powers of the New York Court of Appeals § 112, at 484 [rev ed]). If it appears that the trier of fact has failed to give the evidence the weight it should be accorded, then the appellate court may set aside the verdict (CPL 470.20 [2])." (*People v Bleakley*, 69 NY2d 490, 495.)

Giving "[g]reat deference * * * to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor" (*supra,* at 495), we find that the jury's verdict was not unreasonable and in accord with the weight of the evidence.

Defendant also submits that the photo array procedure utilized with Anthony and Wayne was unduly suggestive, creating a substantial likelihood that defendant would be singled out for identification. He states that the fillers in the photo array do not resemble him, that he was the only one in the photo array living on the cell block and that Wayne and

Anthony were not told there may or may not be a suspect in the array but rather were asked if they could identify the perpetrator of the crime.

There is no requirement that the participants in a photo array or lineup be identical in appearance. All that is required is that they resemble each other sufficiently so that defendant is not "singled out for identification" (*People v Chipp*, 75 NY2d 327, 336, *cert denied* 498 US 833). As the hearing court noted, all the photos had a frontal view of the subject's face and the fillers have the same physical make-up, sex, hair and race as defendant. All are of similar age, weight and build and all are dark complexioned. While defendant asserts that he was picked because Wayne and Anthony recognized him as a fellow inmate in the same cell block, this actually supports the argument made by the prosecutor at trial that the identifications were merely confirmatory in nature since the accused individuals had been known to the victims (*People v Tas*, 51 NY2d 915). Also, the victims were *not* told simply to pick out the perpetrator from the group of photographs but that the array "may or may not contain" a picture of the person who committed the crime.

The defendant also claims that he was denied an opportunity to present a complete defense since the prosecution failed to preserve the log book of telephone calls that Wayne testified he signed the night of the incident when he called his mother and informed her of the crime. After a hearing on the matter, the court found that the log book was destroyed by the facility in the ordinary course of business *or* destroyed in a flood during the winter of 1994 with other papers. The court specifically found and the record supports the finding that there was no bad faith in the loss of the log book, but rather that the People made good faith efforts to locate the book when its possible existence was first learned by them. The prison telephone log book was a record kept by the Department of Correction and was not, therefore, in the possession or control of the People (*People v Kelly*, 88 NY2d 248). Since no *Brady* or *Rosario* violation occurred (*Brady v Maryland*, 373 US 83; *People v Rosario*, 9 NY2d 286, *cert denied* 368 US 866), the court properly allowed the "prompt outcry" testimony and also properly refused to submit an adverse inference charge to the jury.

Defendant's *Batson* (*Batson v Kentucky*, 476 US 79) claim is without merit. After the defendant peremptorily challenged jurors 3, 5 and 14, the prosecutor objected on *Batson* grounds since all three prospective jurors were the only white females on the panel. This satisfied the first step of the *Batson* analy-

sis, i.e., a prima facie showing of improper discrimination (*People v Allen*, 86 NY2d 101, 109). When the defense explained that the preemptory challenge to number 14 was because she was retired and it was a strategic decision to select "currently employed" individuals, the court found that this was a facially racially neutral explanation satisfying the second step, i.e., facially neutral reasons supporting the challenge (*supra*). However, the prosecutor then pointed out that juror 13, a female who *also* was currently not employed, had not been peremptorily challenged by the defense. In applying step three of the *Batson* rule (*supra* at 110), the court ruled that the reason given by the defense for the challenge was pretextual. The record supports this factual determination of the trial court.

We find that the remainder of defendant's claims of error are devoid of merit. Concur—Sullivan, J. P., Milonas, Ellerin, Nardelli and Mazzarelli, JJ.