■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THURMAN DURANT, Appellant. [672 NYS2d 433] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Robinson, J.), rendered January 5, 1996, convicting him of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

During the second round of voir dire, the defense counsel raised a *Batson* claim (*see, Batson v Kentucky,* 476 US 79), arguing that the prosecutor exercised two peremptory challenges to exclude potential black jurors because of their race. Although the prosecutor objected that the defense counsel failed to make a prima facie showing that she had exercised her challenges in a racially-discriminatory manner, the trial

court required the prosecutor to provide race-neutral reasons for her challenges, and made a preliminary determination to disallow one of the strikes. However, the prosecutor continued to maintain that no prima facie case had been established, and after reviewing relevant authority during a recess, the trial court agreed, and permitted the prosecutor's challenge to stand.

Contrary to the defendant's contention, the trial court did not err in allowing the prosecution's challenge to the prospective juror. A party need give no reason at all for the exercise of a peremptory challenge (*see, People v Allen*, 86 NY2d 101, 109), and thus step one of the *Batson* inquiry requires the defendant to establish a prima facie case by showing that "there exist facts and other relevant circumstances sufficient to raise an inference that the prosecution used its peremptory challenges to exclude potential jurors because of their race" (*People v Childress*, 81 NY2d 263, 266). At bar, the defendant concededly failed to make such a prima facie showing, and thus the burden of overcoming the inference of purposeful discrimination never shifted to the People (*see, Batson v Kentucky, supra,* at 96-97; *People v Allen, supra*). The fact that the trial court erroneously made a preliminary ruling that a prima facie case had been established, and ruled on the issue of whether the challenges to two potential jurors had been proper, did not render moot the issue of whether the defendant carried his initial burden of proof.

It is also significant to note that following its realization that no "pattern of purposeful exclusion sufficient to raise an inference of discrimination" had been demonstrated (*People v Steele,* 79 NY2d 317, 325), the trial court never made a final ruling on the issue of whether the defendant had sustained his ultimate burden of proving intentional discrimination under the third prong of the *Batson* test. Since the issue of whether the prosecutor intended to discriminate is a question of fact which must be resolved in the first instance by the trial court (*see, People v Allen, supra,* at 110), the court's preliminary, third-step finding that the prosecutor had used one of her strikes improperly did not prohibit it from reconsidering its ruling upon a determination that no facts and circumstances sufficient to raise an inference of discrimination had been shown. In sum, as clearly no third-step determination was required, none was in fact ever rendered.

Furthermore, the trial court did not err in closing the courtroom to the public during the testimony of the two undercover narcotics officers. The undercover officers testified at a *Hinton* hearing (*see, People v Hinton,* 31 NY2d 71, *cert*

*denied* 410 US 911), that they continued to work in the immediate vicinity of the defendant's arrest; that they had previously been threatened by other drug suspects; that they had seen the targets of other drug investigations in the courthouse; and that they took measures to prevent their identity as undercover officers from being revealed while they were in the courthouse. This testimony established a sufficient link between the officers' concern for their safety and their open-court testimony so as to warrant closure (*see, People v Ramos,* 235 AD2d 556, *affd* 90 NY2d 490, *cert denied sub nom. Ayala v New York,* 522 US 1002; *People v Martinez,* 82 NY2d 436; *People v Pastrana,* 237 AD2d 628). In addition, the trial court did not improvidently exercise its discretion in rejecting the defendant's proposed alternative to closure during the testimony of the two officers. Although the trial court did not explicitly state its reasons for rejecting the defendant's proposal, it can be implied from the trial court's findings that it accepted the People's argument that the proposed alternative would not fully protect the officers' safety (*see, People v Ayala,* 90 NY2d 490, *cert denied* 522 US 1002 *supra*).

The sentence imposed was not excessive (*see, People v Suitte,* 90 AD2d 80). Rosenblatt, J. P., Krausman and Florio, JJ., concur.

Ritter, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum. In affirming this conviction, the majority is sustaining a verdict rendered by a jury selected in violation of a basic tenet of *Batson v Kentucky* (476 US 79), which is that race cannot be the reason for a peremptory challenge. The ultimate effect of such a determination is to permit a jury selection process in which the People's peremptory challenge to a black juror was sustained despite the trial court's finding that the People relied upon pretext when required to state a race-neutral explanation for the challenge. Because I believe that the judgment should be reversed and a new trial Ordered, I respectfully dissent.

After the People peremptorily challenged two out of three black venirepersons, the defense raised a *Batson* challenge. The trial court, over an objection by the People that the defense had failed to establish a prima facie showing of racial discrimination, directed the prosecutor to "give [the court] a neutral reason why you struck those two jurors". At issue on appeal is the challenge to the second of the two venirepersons, juror number four. The prosecutor asserted that she peremptorily challenged juror number four because that juror was "making faces" at her, and because that juror's tone was hostile when

answering her questions. The trial court, noting, "[w]e must not have been listening and watching the same person because I didn't see any faces or hear any hostile answers", rejected such reasons as pretextual, holding, "[i]f that's your reason for number 4, it's denied and the juror will not be challenged".

Given the trial court's complete negation of the factual bases for the prosecutor's proffered reasons for challenging juror number four, which concerned that juror's appearance and demeanor, the finding of pretext, if reviewed on appeal, would have surely been sustained (see, People v Liang Jun Ying, 236 AD2d 630; People v Richie, 217 AD2d 84, 88). However, juror number four was not seated. After additional argument by the People, and further research during a recess, the trial court revisited and then reversed its step-one determination that a prima facie showing of racial discrimination had been established. Holding that a sufficient step-one showing had not been made, the trial court allowed the People's peremptory challenge to stand, and dismissed juror number four. Because the trial court had already rendered a step-three determination as to pretext, the issue of whether or not a prima facie case of discrimination had been established was academic (see, People v Payne, 88 NY2d 172; People v Franklin, 248 AD2d 726; People v Jones, 204 AD2d 485). Thus, a peremptory challenge was improperly permitted to stand despite a finding that the proffered reasons therefor were pretextual (see, Batson v Kentucky, supra; People v Kern, 75 NY2d 638, cert denied 498 US 824). The majority avoids reaching this issue by characterizing various of the trial court's rulings as merely "preliminary" and finding that in fact, no step-three determination was actually made (or was also merely a "preliminary finding"). However, at no time did the trial court expressly characterize any of its rulings as such, and I do not believe that a reasonable reading of the record supports such characterizations. Accordingly, I would reverse the judgment and remit the matter for a new trial.