[850 NE2d 637, 817 NYS2d 590]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TERENCE WELLS, Appellant.

Argued March 29, 2006; decided May 11, 2006

## POINTS OF COUNSEL

*Office of the Appellate Defender,* New York City (*Brian W. Stull, Richard M. Greenberg* and *Sara Gurwitch* of counsel), for appellant. I. The trial court erred in refusing to strike a newly-seated panel of prospective jurors after a venireperson tainted the panel by bearing witness to the honesty of the prosecution's most crucial police witness, Detective Eddie Molina. (*Mach v Stewart,* 137 F3d 630; *Irvin v Dowd,* 366 US 717; *People v Branch,* 46 NY2d 645; *Smith v Phillips,* 455 US 209; *People v Ayuso,* 254 AD2d 26; *United States v Trujillo,* 146 F3d 838;

*United States v Khoury,* 901 F2d 948; *People v Carrasco,* 262 AD2d 50; *People v Purcell,* 103 AD2d 938; *People v Blyden,* 55 NY2d 73.) II. Where the prosecution's proffered reason for exercising a peremptory challenge against a female African-American prospective juror was that the juror reminded the prosecutor of a female African-American judge, the prosecution failed to meet its burden of providing a race-neutral reason at step two of the *Batson* inquiry. (*Batson v Kentucky,* 476 US 79; *People v Smocum,* 99 NY2d 418; *People v Allen,* 86 NY2d 101; *People v Duncan,* 177 AD2d 187; *People v Van Hoesen,* 307 AD2d 376; *People v Pierrot,* 289 AD2d 511; *People v Taam,* 260 AD2d 261; *Purkett v Elem,* 514 US 765; *Howard v Senkowski,* 986 F2d 24; *Gattis v Snyder,* 278 F3d 222.) III. The allegation that Terence Wells attempted to kill a police officer was rendered impermissibly duplicitous by the trial evidence which suggested two potential victims, and the court erred by submitting this duplicitous count to the jury without instructing the jury on which charge it was to deliberate. (*People v Jiminez,* 239 AD2d 360; *People v Keindl,* 68 NY2d 410; *People v Beauchamp,* 74 NY2d 639; *People v First Meridian Planning Corp.,* 86 NY2d 608; *People v Sullivan,* 173 NY 122; *People v Fernandez,* 88 NY2d 777; *People v Cahill,* 2 NY3d 14; *People v Gonzalez,* 1 NY3d 464; *People v Jernatowski,* 238 NY 188.)

*Robert M. Morgenthau, District Attorney,* New York City (*Sandra E. Cavazos* and *Sylvia Wertheimer* of counsel), for respondent. I. The court correctly exercised its discretion in denying defendant's motion to dismiss an entire jury panel based on an isolated remark by one panelist who knew Detective Molina. (*People v Williams,* 63 NY2d 882; *People v Guzman,* 76 NY2d 1; *People v Cruz,* 292 AD2d 175; *People v Ayuso,* 254 AD2d 26; *People v Ali,* 241 AD2d 321; *Mach v Stewart,* 137 F3d 630; *People v Fisher,* 244 AD2d 191; *People v Perez,* 203 AD2d 123; *People v Davis,* 58 NY2d 1102; *People v Owens,* 292 AD2d 218.) II. Defendant has failed to preserve his *Batson* claim. In any event, the prosecutor's reasons for exercising a peremptory challenge against prospective juror Corlis Brown were facially race-neutral. (*People v Smocum,* 99 NY2d 418; *People v Allen,* 86 NY2d 101; *Purkett v Elem,* 514 US 765; *Hernandez v New York,* 500 US 352; *People v Payne,* 88 NY2d 172; *People v James,* 99 NY2d 264; *People v Williams,* 92 NY2d 993; *People v Stephens,* 84 NY2d 990; *People v Childress,* 81 NY2d 263; *People v Finger,* 95 NY2d 894; *People v Gray,* 86 NY2d 10.) III. The attempted murder count based on the shots defendant fired at detectives Molina and Weston was not duplicitous. (*People v Fernandez,* 88

NY2d 777; *People v Davis,* 72 NY2d 32; *People v Keindl,* 68 NY2d 410; *People v Beauchamp,* 74 NY2d 639; *People v Mike,* 92 NY2d 996; *People v Cabassa,* 79 NY2d 722; *People v Stanley,* 23 AD3d 683; *People v Perry,* 266 AD2d 151; *People v Sullivan,* 173 NY 122; *Schad v Arizona,* 501 US 624.)

**OPINION OF THE COURT**

GRAFFEO, J.

This appeal focuses on whether a single charge of attempted intentional murder is duplicitous when the evidence adduced at trial demonstrates that the defendant fired a gun in the direction of more than one individual but does not definitively establish the identity of the intended victim. Based on the reasoning expressed in *People v Fernandez* (88 NY2d 777 [1996]), we conclude that such a charge is not defective and, thus, may be submitted to the jury.

I

On October 13, 1999, defendant Terence Wells and his accomplice Lerone Grant planned to rob a Manhattan bakery. Just before the store closed, they entered wearing wigs and hats, and each was armed with a handgun. In the course of their attempt to steal cash kept in the store's office, they killed two individuals by shooting them multiple times and seriously injured two others.

At the time of the shootings, several undercover police officers were preparing to conduct a narcotics surveillance operation in the vicinity of the bakery. Two detectives, Christopher Weston and Eddie Molina, heard what sounded like firecrackers and saw a number of individuals fleeing the bakery. Upon seeing defendant and Grant run out of the store with what appeared to be a weapon, Detective Weston announced that he was a police officer and ordered the men to stop. Defendant responded by firing his gun twice in the direction of the two detectives as he ran up the street.

A foot chase by the police ensued. Defendant dropped several articles of clothing to the ground and a police officer retrieved one of the items—a wig—discovering a handgun concealed inside. Eventually, defendant was apprehended by another police officer who answered a call for assistance. Defendant's accomplice was also arrested after he shot at police officers and abandoned his weapon.

Defendant, along with Grant and several other individuals involved in the planning or execution of these crimes, was

charged with multiple counts of murder in the first and second degrees, attempted murder in the first degree of a police officer and related offenses.[1] Following a jury trial, defendant was convicted of, among other crimes, murder in the first and second degrees and one count of attempted murder in the second degree as a lesser included offense of attempted murder of a police officer. Defendant was subsequently sentenced to an aggregate prison term of 50 years to life. The Appellate Division affirmed, as do we.

## II

At the close of proof at trial, defendant moved to dismiss the count of the indictment that charged him with attempted first-degree murder of a police officer, arguing that the count was duplicitous because the evidence failed to establish whether defendant intended to kill Detective Weston or Detective Molina. The trial court reserved decision and charged the jury on the elements of attempted first-degree murder as well as the lesser-included offense of attempted murder in the second degree. With regard to the greater offense, the court instructed that this count required the jury to find that defendant intended to kill a police officer who was engaged in the course of performing his official acts. As for the lesser offense, the court initially informed the jury that it had to find that defendant's intended victim was Detective Molina, but the court later amended its charge and told the jury that the People had to prove that defendant intended to cause the death of "another person." Defendant objected to these instructions, reiterating his earlier argument that they allowed the jury to convict without unanimously identifying the individual that defendant sought to kill and, therefore, the first-degree murder count was duplicitous. The court rejected this contention on the authority of *People v Fernandez* (88 NY2d 777 [1996]), thereby effectively denying defendant's motion to dismiss on duplicity grounds.

During deliberations, the jury sent a note seeking clarification of whether the count of attempted murder in the first degree applied to "Detective Molina alone or to detectives Molina and/or Weston." The court responded that this issue was a question of fact for the jury to resolve. Defense counsel again voiced his duplicity objection, but was overruled. The jury

---

1. Codefendant Grant and two other men involved in this criminal transaction pleaded guilty to various crimes.

ultimately acquitted defendant of attempted first-degree murder but convicted him of attempted murder in the second degree.

The primary issue on appeal is whether the count of the indictment charging defendant with attempted murder in the first degree for shooting at the two detectives was duplicitous since the evidence at trial failed to specify which police officer defendant intended to kill. Defendant asserts that the attempted murder count was defective in that it was used to prosecute two distinct crimes and that the trial court committed reversible error because the jury was not instructed to unanimously determine whether the intended victim was Detective Molina or Detective Weston.

A count of an indictment is duplicitous and, hence, defective if it charges more than one offense (see CPL 200.30 [1]; *People v Keindl*, 68 NY2d 410, 417-418 [1986]). If the commission of a single act constitutes a crime, "that act must be the only offense alleged in the count" and "acts which separately and individually make out distinct crimes must be charged in separate and distinct counts" (*People v Keindl*, 68 NY2d at 417).[2] As relevant to this case, the offense of first-degree murder is committed when, with the intent to kill a police officer engaged in the performance of official duties, the defendant causes the death of that police officer or a third person and "the defendant knew or reasonably should have known that the intended victim was a police officer" (Penal Law § 125.27 [1] [a] [i]). Second-degree murder, a lesser included offense, similarly requires an intent to kill, but that intent may be directed at "another person" who need not be a police officer (Penal Law § 125.25 [1]). An attempt to commit these crimes occurs if a defendant, possessing the requisite murderous intent, acts in a manner that "tends to effect the commission of such crime[s]" (Penal Law § 110.00).

█ Although the People were required to demonstrate that defendant intended to kill, we conclude that the People did not

---

**2.** The duplicity principle is designed to protect the accused against successive prosecutions in violation of the Double Jeopardy Clause (*People v First Meridian Planning Corp.*, 86 NY2d 608, 615 [1995]). It also ensures juror unanimity because

> "[i]f two or more offenses are alleged in one count, individual jurors might vote to convict a defendant of that count on the basis of *different* offenses; the defendant would thus stand convicted under that count even though the jury may never have reached a unanimous verdict as to any one of the offenses" (*People v Keindl*, 68 NY2d at 418).

have to establish which of the two police officers was the target of defendant's conduct under the facts presented in this case. As we explained in *People v Fernandez* (88 NY2d 777 [1996]), "actual death is not an element" of attempted murder and, therefore, the "identity of the person whose death" was intended is not relevant in determining whether the crime has been committed (*id.* at 783). The defendant in *Fernandez* was charged with attempted murder for firing a gun at a group of individuals and shooting a person named Correa. We ruled that it was proper to instruct the jury that it could convict the defendant of attempted murder if it found that he intended to cause the death of Correa or another person in the group (*see id.*). And, in *People v Cabassa* (79 NY2d 722, 728 [1992], *cert denied sub nom. Lind v New York,* 506 US 1011 [1992]), we concluded that there was sufficient evidence to support an attempted first-degree murder conviction where a gun was fired indiscriminately toward two pursuing police officers who were in the same patrol car and at a police officer standing on the street next to a road-block.

Under this rationale, the identity of the specific police officer against whom defendant's murderous intent was directed is not an element of attempted murder in the first or second degree. As a result, the jury in this case was properly advised that it could convict defendant of attempted murder if defendant acted with the intent to kill, without specifying whether the intended victim was Detective Molina or Detective Weston (*cf. People v Mateo,* 2 NY3d 383, 406-408 [2004], *cert denied* 542 US 946 [2004] [in first-degree murder prosecution, jury is not required to unanimously decide whether the defendant was the actual killer or commanded another to kill]). The trial court's refusal to instruct the jury that it had to unanimously determine which detective defendant intended to kill did not render the attempted murder counts duplicitous because each charged a single crime based on a single incident—engaging in conduct (the shooting at Detectives Molina and Weston) that tended to effect the crime of murder while acting with the intent to cause the death of a police officer or another person. Consequently, there is no basis to disturb the attempted second-degree murder conviction.

### III

Defendant also maintains that he is entitled to a new trial because the prosecutor impermissibly used a peremptory chal-

lenge against a female African-American prospective juror in violation of *Batson v Kentucky* (476 US 79 [1986]). Defense counsel raised a *Batson* challenge during the second round of jury selection. When asked by the trial court to provide race-neutral reasons for the removal of this woman, the prosecutor stated that the prospective juror had held her hand over her mouth when answering questions, which indicated to the prosecutor that the juror had "something to hide." The prosecutor also claimed that the juror had "an unsettling gaze" that was "difficult to deal with," and remarked that the juror reminded her of a particular New York City judge. In addition, the prosecutor noted that the juror liked to read detective stories and "might have [an] expectation of what should be part of a case." Defendant did not claim that the prosecutor's reasons were pretextual. The trial court found the justifications for the peremptory challenge to be nondiscriminatory and denied defendant's *Batson* application.

> "[I]n order to establish a prima facie case of discrimination in the selection of jurors under *Batson*, a defendant asserting a claim must show that the exercise of peremptory challenges by the prosecution removes one or more members of a cognizable racial group from the venire and that facts and other relevant circumstances support a finding that the use of these peremptory challenges excludes potential jurors because of their race" (*People v Brown*, 97 NY2d 500, 507 [2002]).

Once these showings are made, the burden then shifts to the People to respond with a race-neutral explanation for the peremptory challenge (*see id.*). "If a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination" (*Purkett v Elem*, 514 US 765, 767 [1995]) or whether the reasons proffered by the prosecution were pretextual (*see People v Allen*, 86 NY2d 101, 104 [1995]).

■ We conclude that the record supports the trial court's determination that the prosecutor's justifications were race-neutral. The prosecutor's reasons for exercising the peremptory challenge focused on the juror's demeanor (placing her hand over her mouth and having an "unsettling gaze") and fondness for detective stories (which might cause her to have certain expectations about the trial evidence). Furthermore, the prosecutor's reference to a particular judge, although in "poor

taste" as noted by the Appellate Division (14 AD3d 320, 321 [2005]), was not facially race-based (*see Purkett v Elem*, 514 US at 768 ["Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral" (internal quotation marks omitted)]).[3] Because the People's burden "is met by offering any facially neutral reason for the challenge—even if that reason is ill-founded—so long as the reason does not violate equal protection" (*People v Allen*, 86 NY2d at 109), and the trial court's findings are entitled to deference (*People v Hernandez*, 75 NY2d 350, 356 [1990], *affd* 500 US 352 [1991]), we cannot say that the prosecutor's justifications for the use of the peremptory challenge were inadequate.

## IV

Finally, defendant contends that the trial court erred in refusing to discharge an entire panel of prospective jurors after a comment about a possible witness was made by one member of the array. During the fourth round of jury selection and after 10 individuals had been sworn as jurors, the trial court read a list of potential witnesses to a panel of 27 prospective jurors, asking if they were familiar with any of those individuals. One individual replied that he was "good friends" with a detective whose name was on the list. When asked if this friendship would affect his ability to be fair and impartial, the prospective juror replied, "I think he's an honest guy so I would tend to be swayed by what he says."

The trial court promptly discharged that prospective juror for cause. Defendant, however, asked that all 26 other members of the panel also be removed because the detective was an important witness and they had heard the remark. The trial court denied defendant's request but later questioned the prospective jurors collectively to determine whether they had been influenced by comments made by any other prospective juror.

When instructing the panel on general principles regarding the trial, the court stated that "[e]ach witness's testimony must

3. Although it may be possible that an unexplained comparison of a prospective juror to a specific person could carry an inference of discriminatory intent, if defendant believed that the oblique reference in this case had improper racial overtones that were not facially apparent, defense counsel should have made an adequate record to allow that claim to be considered by the trial court and reviewed on appeal (*see People v James*, 99 NY2d 264, 270 [2002] ["(a) party asserting a claim under *Batson* . . . should articulate and develop all of the grounds supporting the claim, both factual and legal" (internal quotation marks omitted)]; *People v Smocum*, 99 NY2d 418, 423-424 [2003]).

be weighed upon its own merits" and asked "[i]f anyone thinks he or she may have feelings favorable or unfavorable for any witness you are bound by your oath to say that. Does anyone have an affirmative answer to that one?" Two persons expressed concerns about their ability to be fair and were excused by the court. The court then inquired if anyone had "any feeling about the police or have had experiences which would lead you to give a police officer's testimony any greater or lessor [*sic*] weight than anyone else's testimony?" None of the prospective jurors indicated that they were incapable of impartially judging a police officer's veracity. The next question to the panel was: "is there anything about any answers to any questions or any statements made by any other prospective juror that any of you feel might affect your ability to be fair and impartial in this case?" No one offered an affirmative reply to this question.

Based on the content of the prospective juror's statement, in conjunction with the court's inquiries and the responses thereto, there was no legal basis to dismiss the panel for cause. The removed juror's remark did not create a likelihood of substantial prejudice because it did not relate to defendant's guilt, refer to his reputation in the community, or provide an expert-like opinion regarding the likelihood that he had been falsely accused—statements which may, depending on the circumstances, warrant additional remedial action by a trial court (*see e.g. Mach v Stewart*, 137 F3d 630, 633 [9th Cir 1997]; *Moore v State*, 156 Ga App 92, 93, 274 SE2d 107, 108 [Ct App 1980]). Furthermore, none of the prospective jurors indicated that the comment about the detective would affect his or her ability to be fair and impartial or would cause any of them to give a police officer's testimony more weight than other witnesses. We therefore conclude that there was no abuse of discretion by the court in declining to excuse the panel.

Accordingly, the order of the Appellate Division should be affirmed.

G.B. SMITH, J. (concurring). I agree with the Court's conclusion that the order appealed from should be affirmed. After the prosecution set out its reasons for the peremptory strike of a female African-American prospective juror, defendant did not say anything further about her or make an attempt to seek clarification of the prosecution's ambiguous explanation comparing her to a former state Supreme Court justice. Thus, defendant did not make the specific and timely objections necessary

to: (1) apprise the court of the ambiguities inherent in this explanation and of his opposing arguments; and (2) give the court the opportunity to take any necessary remedial action. Thus, by failing to make an objection that the reason proffered by the prosecution was not clearly race/gender-neutral, defendant failed to preserve this argument for appellate review.

It should be emphasized, however, that after a defendant makes out a prima facie case of discrimination in the selection of jurors under *Batson*, the prosecution's explanation for the peremptory challenge must be unequivocally race/gender-neutral and related to the particular case to be tried (*see Batson v Kentucky*, 476 US 79, 98 [1986]). These requirements must be adhered to even where the prosecution gives an explanation that is not clearly race/gender-neutral among explanations that are facially race/gender-neutral.[1]

Here, the Appellate Division concluded that the prosecution met its step two burden of putting forth a race-neutral explanation based on its ruling that "[t]he prosecutor's disparaging comparison of the panelist to a named individual . . . clearly referred to matters of personality and demeanor, but not race" (*People v Wells*, 14 AD3d 320, 321 [1st Dept 2005]).[2] This Court concluded "that the record supports the trial court's determina-

---

**1.** In New York, service on a grand or petit jury is a civil right that cannot be arbitrarily denied (NY Const, art I, § 1; Civil Rights Law § 13 ["No citizen of the state possessing all other qualifications which are or may be required or prescribed by law, shall be disqualified to serve as a grand or petit juror in any court of this state on account of race, creed, color, national origin or sex"]).

Under the Equal Protection clauses of the federal and New York State constitutions (US Const, 14th Amend, § 1; NY Const, art I, § 11), peremptory challenges may not be used to exclude prospective jurors from jury service on the basis of race or gender (*see Batson v Kentucky*, 476 US 79 [1986]; *J. E. B. v Alabama ex rel. T. B.*, 511 US 127 [1994]; *People v Kern*, 75 NY2d 638 [1990]; *People v Allen*, 86 NY2d 101 [1995]). A three-step process was set forth by the United States Supreme Court to address violations of this rule. First, a prima facie case of discriminatory purpose based on a pattern of peremptory challenges (e.g., all Hispanic or male jurors excluded), or other factors, must be established. Second, the prima facie case may be rebutted if the proponent of the strike(s) proffers a race/gender-neutral explanation that is related to the particular case to be tried. Third, the court must determine whether the explanation articulated is a pretext for discrimination (*see Batson*, 476 US at 96-98; *see also J. E. B. v Alabama ex rel. T. B.*).

**2.** At "step two": (1) the explanation proffered by the prosecution need not be persuasive or plausible (*see Purkett v Elem*, 514 US 765 [1995]; *see also People v Allen*, 86 NY2d at 109 [Court stated "step two is met by offering any facially neutral reason for the challenge—even if that reason is ill-founded—so long as the reason does not violate equal protection"]); and (2) " 'the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory

tion that the prosecutor's justifications were race-neutral" and further ruled that: (1) the prosecutor's reasons for exercising the peremptory challenge focused on the prospective juror's demeanor; and (2) the "reference to a particular judge, although in 'poor taste' . . . , was not facially race-based." (Majority op at 58-59.) Because one of the prosecutor's reasons for exercising a peremptory strike against this prospective juror was not unequivocally race/gender-neutral, I disagree with the above-mentioned conclusions reached by this Court and the Appellate Division.

As noted in the Court's opinion, the prosecution cited a number of explanations in support of the peremptory challenge at issue. The explanations are set forth in the following colloquy:

> "[PROSECUTOR]: [The prospective juror] answered questions with her hand over her face, her hand over her mouth. That's something I'm very sensitive to. In my preparation of witnesses, [ ] part of what I tell people when I prepare them to testify [is] when someone is on the stand and talks with her hand over their mouth[,] to people it signifies as a matter of body language something to hide.

> "In addition she has sort of an unsettling gaze that

---

intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral' " (*Purkett v Elem*, 514 US at 768, quoting *Hernandez v New York*, 500 US 352, 360 [1991] [plurality op]; 500 US at 374 [O'Connor, J., concurring in judgment]).

I do not agree with the position that "any" facially neutral explanation, no matter how implausible or ridiculous, as long as it comports with the strictures of equal protection, can rebut a defendant's prima facie case of race- or gender-based discrimination in jury selection. Under this formulation, there would be an inequity in terms of the burdens to be met by the opponent and proponent of the strike, i.e., the opponent of the strike has to establish a pattern of discrimination, or other discriminatory factors, while the proponent could meet its burden by putting forth rote, facially neutral explanations. Moreover, there is a potential for the trivialization of the voir dire process based on the types of explanations that can be advanced by the proponent of a strike. Specifically, since the improper use of peremptory challenges involves rights of a constitutional dimension, the proffered explanations, which essentially argue that the use of such challenges was proper, should reflect the seriousness of the rights involved. In my view, facially neutral explanations should at least be reasonable and, in accordance with *Batson*, related to the trial at hand (*see Batson*, 476 US at 98). Whether the proffered explanation is reasonable does not go to the court's step three analysis. A "reasonable explanation" requirement would merely ensure that the explanations make sense under the circumstances.

I just found difficult to deal with and additionally *she also reminded me, I have to say of [a named Supreme Court justice] which made me just somewhat anxious in a sort of an emotional way.* So those were my concerns plus she reads she indicated affirmatively she read[s] detective stories, someone like that I think notwithstanding what she said might have expectation of what should be part of a case.

"THE COURT: I find that to be nondiscriminatory."
(Emphasis added.)

The prosecutor's statement regarding how the prospective juror reminded her of a named Supreme Court justice, who is also an African-American woman, and how this made the prosecutor "anxious in a sort of [ ] emotional way," raised issues that should have been pursued during the voir dire. Not only is this statement insulting and irrational, it is wholly ambiguous. The proffered reason, on its face, is not clearly race/gender-neutral. Nor is it clearly race/gender-based, i.e., there is no indication from the prosecutor's explanation as to what about the prospective juror reminded the prosecutor of the named Supreme Court justice (e.g., the prosecutor did not mention that the demeanor of the prospective juror was similar to that of the named African-American woman). Nor is it clear from the explanation how the prospective juror made the prosecutor "anxious in a sort of [ ] emotional way."[3] Moreover, the prosecution's explanation, on its face, was not related to the instant matter.

Based on the foregoing, the trial court, before accepting this explanation as race/gender-neutral (and certainly before its ruling that the explanation was nondiscriminatory), should have conducted an inquiry (or directed that defendant conduct an inquiry) to clarify the prosecution's ambiguous explanation.

---

**3.** As noted above, "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral" (*Purkett v Elem*, 514 US at 768). Moreover, this Court's conclusion that the prosecution's explanation was race-neutral was based, in part, on its statement that the explanation "was not facially race-based." These principles should only apply when a race/gender-neutral (or race/gender-based) explanation has been clearly set forth. However, in the instant case, where the prosecutor has put forth an explanation: (1) that is not clearly race/gender-neutral; (2) from which no clear intent of purpose (discriminatory or nondiscriminatory) can be gleaned; and (3) which is not discriminatory on its face, applying these principles necessarily leads to an erroneous result, i.e., a court would be required to find a race/gender-neutral explanation even where one was not clearly present.

Because no such inquiry occurred here, no further explanation of the statement at issue was provided by the prosecution. Without clarification, this statement is not clearly race/gender-neutral. Because all of the explanations for the prosecution's strike of the prospective juror were not clearly race/gender-. neutral, the trial court should have ruled that the prosecution did not meet its step two obligation under *Batson*.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, READ and R.S. SMITH concur with Judge GRAFFEO; Judge G.B. SMITH concurs in a separate opinion.

Order affirmed.