THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RONALD L. MILLER, Appellant.

Third Department, January 26, 1989

### APPEARANCES OF COUNSEL

*Fernande Rossetti* for appellant.

*Sol Greenberg, District Attorney (John E. Maney* of counsel), for respondent.

### OPINION OF THE COURT

Kane, J.

Defendant, a black male, was identified as the individual who attempted to cash a check drawn on the account of "Joseph and Dimitrios' Woodworking Ltd." at a supermarket in the Town of Bethlehem, Albany County. The store manager refused to honor the check. A number of checks had been stolen recently from Joseph and Dimitrios' Woodworking, and this information had been imparted to a Grand Union store in the same area where defendant later attempted to cash another check drawn on the same account. On this occasion, the store manager called the police, who subsequently apprehended defendant and, after questioning, took him into custody. He was then identified by the various store personnel as the individual who had attempted to negotiate the stolen checks.

In seeking reversal of his conviction on this appeal, defendant raises a number of issues, three of which have merit.

First, defendant argues that the prosecutor's use of his peremptory challenges to excuse each and every black person

drawn as a prospective trial juror violates his rights under the Equal Protection Clause of the 14th Amendment of the US Constitution *(see, Batson v Kentucky,* 476 US 79). In *Batson v Kentucky (supra),* the United States Supreme Court changed the evidentiary requirements to make out such an equal protection claim by rejecting that portion of *Swain v Alabama* (380 US 202) which had held that a showing of systematic exclusion based on race over a period of time was required, and set forth a new rule providing that a defendant can establish a prima facie equal protection claim based solely on the conduct of the prosecutor at the time of his trial. The court in *Batson* stated: "To establish such a case, the defendant first must show that he is a member of a cognizable racial group * * * and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' * * * Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury * * * raises the necessary inference of purposeful discrimination" *(Batson v Kentucky,* 476 US 79, 96, *supra,* quoting *Avery v Georgia,* 345 US 559, 562).

■ Accordingly, once a defendant has made a prima facie showing, the burden is then upon the prosecutor to provide specific race-neutral explanations for the rejection of veniremen of that defendant's race; a burden not met by mere general denials of discriminatory motives or general assertions of good faith *(see, Batson v Kentucky, supra,* at 97-98). Although in the case at bar these requirements were not mandated at the time defendant's jury was chosen, since *Batson* had not yet been handed down, the principles must apply because the *Batson* requirements have been given retroactive application *(see, Griffith v Kentucky,* 479 US 314). Here, defendant established the prima facie showing necessary to make an equal protection claim. In examining three panels totaling 38 prospective jurors, the prosecutor exercised eight peremptory challenges, four of which were used to excuse blacks, thus excluding all blacks on the venire. On each occasion, defense counsel noted the exclusion on the record,

and on each occasion the prosecutor attempted to explain that his actions were based on race-neutral motives.

The prosecutor's explanations were inadequate. On two occasions, they were mere general denials of ill motive and assertions of good faith; on another occasion, the only explanation was that the juror worked for the Department of Social Services. Another juror was excluded because of being an alternate in another case, although other jurors with prior experience were allowed to sit, and, as an additional example of inconsistency, one was excluded because of lack of prior experience.

Under normal circumstances, the proper remedy would be to hold the appeal in abeyance and remit for a hearing to provide the prosecutor with an opportunity to articulate race-neutral explanations for his peremptory challenges, since we are giving a retroactive application to the *Batson* rule. However, because the transcript of the voir dire examination is in the record, and for other reasons hereinafter stated, such a procedure would not be appropriate in this case.

■ At the time defendant's case was presented to the Grand Jury, he requested an opportunity to testify on his own behalf with counsel present *(see,* CPL 190.45 [3]; 190.50 [5] [b]; 190.52). When a defendant elects to exercise this right, it is required by statute that he be afforded an opportunity to give his version of events prior to being examined by the People *(People v Lerman,* 116 AD2d 665, 666; *People v Durante,* 97 AD2d 851). Here, the record demonstrates that defendant had barely commenced his narrative explanation of the events when he was interrupted and persistently questioned by the prosecutor without a meaningful opportunity to continue his narrative testimony. While it is permissible for a prosecutor to interrupt the narrative and question a defendant for purposes of "clarification" *(People v Millson,* 93 AD2d 899), care must be taken to assure that a defendant is given a fair opportunity to present his version of events before being subjected to examination by the People. In this case, the record demonstrates that the procedures before the Grand Jury at which defendant testified were defective, since they were not in accordance with the requirements of the statute. Thus, the indictment returned must be dismissed, without prejudice to the People to resubmit the charge of criminal possession of stolen property in the third degree to another Grand Jury, if they be so advised *(see, People v Lerman, supra).*

■ As to the conviction for the crime of criminal possession of a forged instrument in the second degree, we conclude that that count of the indictment must be dismissed for failure of proof. There is insufficient evidence in the record to establish that defendant had knowledge at the critical times that the check in his possession was forged. Absent such proof, the mere attempted negotiation or utterance of a forged instrument cannot, of itself, establish a presumption that defendant had knowledge the instrument was forged (see, *People v Johnson,* 65 NY2d 556, 561). Here, there is no proof as to who stole the check defendant sought to negotiate, how defendant came into possession of the check or whether the check had been forged before defendant received it (see, *People v Green,* 53 NY2d 651).

Accordingly, defendant's conviction must be reversed and the indictment dismissed, with leave given to the People to re-present the charge of criminal possession of stolen property in the third degree to another Grand Jury (see, CPL 470.20).

MAHONEY, P. J., CASEY, WEISS and LEVINE, JJ., concur.

Judgment reversed, on the law, indictment dismissed with leave to the People to re-present the charge of criminal possession of stolen property in the third degree to another Grand Jury.