**Jacob W. BELL, Petitioner,**

v.

**Timothy MURRAY, Superintendent, Respondent.**

**No. 02–CV–6264L.**

United States District Court, W.D. New York.

Oct. 5, 2004.

Jacob W. Bell, Sonyea, NY, Petitioner Pro Se.

Gary M. Levine, Esq., NYS Attorney General's Office Department of Law, Rochester, NY, for Respondent.

## DECISION AND ORDER

LARIMER, District Judge.

## INTRODUCTION

Jacob W. Bell ("Bell") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 1999 conviction in Ontario County Court on charges of criminal possession of a forged instrument, criminal possession of stolen property, criminal solicitation, and attempted petit larceny.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 4, 1999, a New York State Police trooper received a 911 radio transmission that a man with a stolen check was leaving the Canandaigua School District Credit Union on a bicycle. The suspect was described as a black male wearing a dark-colored jacket and a blue hat. Several minutes later, the trooper spotted a man fitting that description in the area, stopped him and asked him some questions.

. The suspect, petitioner Bell, gave identification. After checking his identification, the trooper asked Bell if he previously had been at the credit union, and Bell responded affirmatively. At that point, the trooper asked Bell to give him the check, whereupon Bell reached into his pocket and produced the check. The check was in the name of "Deborah Frederick" and was drawn on the credit union. When the trooper asked Bell what he was doing with the check, Bell replied that Deborah Frederick ("Frederick") had asked him to cash it for her, but that it had been refused by

the bank because there were insufficient funds in the account.

While speaking with Bell, the trooper received a radio transmission informing him that the owner of the check had faxed a statement to the police indicating that the check was not to be cashed. At that point, the trooper read Bell his rights. Bell admitted signing the check but stated that Frederick was his girlfriend and knew that he was doing this. Bell stated that she would probably change her story depending on whether she was drunk.

Bell was indicted by an Ontario County Grand Jury on charges related to the stolen check, as well as to a forged U.S. savings bond also allegedly stolen from Frederick. Following a jury trial in Ontario County Court (Henry, J.) at which Bell represented himself with the assistance of stand-by counsel, Bell was convicted of criminal possession of a forged instrument, criminal possession of stolen property, criminal solicitation, and attempted petit larceny. He was sentenced as a predicate felon to 4½ to 9 years incarceration on the first count of the indictment and concurrent terms of imprisonment on the remaining three counts.

Represented by counsel, Bell appealed his conviction. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction on September 28, 2001. *People v. Bell*, 286 A.D.2d 931, 730 N.Y.S.2d 755 (4th Dep't 2001). The New York Court of Appeals denied leave to appeal on December 26, 2001. *People v. Bell*, 97 N.Y.2d 679, 738 N.Y.S.2d 293, 764 N.E.2d 397 (2001).

Bell originally filed his petition for habeas corpus pursuant to 28 U.S.C. § 2254 in this Court on March 5, 2002. Respondent answered and alleged as an affirmative defense that some of Bell's claims were unexhausted.

In a decision and order entered July 30, 2002, this Court held "that to the extent petitioner's claims in his petition are unexhausted, the claims are dismissed without prejudice subject to the condition that petitioner initiate efforts to exhaust these claims within 30 days of the filing of this order and that petitioner return to this Court within 30 days of the completion of the effort to exhaust." *See* 7/30/02 Order (Docket # 8).

On August 7, 2002, Bell filed an application for a writ of error *coram nobis* in state court alleging that his appellate counsel was ineffective for various reasons. The Fourth Department summarily denied relief on November 15, 2002. *People v. Bell*, 299 A.D.2d 973 (4th Dep't 2002). The New York Court of Appeals denied leave to appeal on July 21, 2003.[1]

By order entered August 11, 2003, Bell was directed to file an amended petition pursuant to 28 U.S.C. § 2254 clarifying the grounds upon which he wished to challenge his 1999 conviction in Ontario County Court. *See* 8/11/03 Order (Docket # 15). On September 1, 2003, Bell filed an amended petition indicating that he intended to pursue the following three claims: (1) insufficiency of the evidence; (2) ineffective assistance of appellate counsel; and (3) denial of a full and fair hearing on his Fourth Amendment claim. *See* Amended Petition ("Amend.Pet.") (Docket # 16).

## DISCUSSION

### *Standing*

■ At the outset, the Court notes that Bell is no longer incarcerated, having been

1. On April 28, 2003, during the pendency of his *coram nobis* application, Bell was released

on parole.

released on parole on April 28, 2003. "The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States.'" *Maleng v. Cook*, 490 U.S. 488, 490, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (quoting 28 U.S.C. § 2241(c)(3) (emphasis in original) and citing 28 U.S.C. § 2254(a)). The Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng*, 490 U.S. at 490–91, 109 S.Ct. 1923 (citing *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968)).

A habeas petitioner need not be confined physically to satisfy the "in custody" requirement, however. *Maleng v. Cook*, 490 U.S. at 491, 109 S.Ct. 1923. All petitioners whose convictions cause them to suffer substantial restraints not shared by the public generally come within the statute's purview, and parole has long been held to constitute such a restraint. *See Jones v. Cunningham*, 371 U.S. 236, 242–43, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); *accord, e.g., Scanio v. United States*, 37 F.3d 858, 860 (2d Cir.1994). As Bell remains on parole for the Ontario County Court convictions, he is "in custody" for those convictions under 28 U.S.C. § 2254(a). Bell's petition for habeas relief still presents "a case or controversy" under Article III, § 2, of the Constitution for which he may seek redress in this Court.

### Section 2244(b)(1) and Successive Petitions

Respondent argues that Bell's amended petition filed on September 1, 2003, is an improper successive petition and should be dismissed pursuant to 28 U.S.C. § 2244(b)(1) ("A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."). *See* Resp't Mem. at 5 (Docket # 19).

As an initial matter, I note that "AEDPA[2] does not define what constitutes a 'second or successive' petition." *James v. Walsh*, 308 F.3d 162, 167 (2d Cir.2002); *see also Villanueva v. United States*, 346 F.3d 55, 60 (2d Cir.2003). The Second Circuit has held that "to be considered 'successive,' a prisoner's second petition must, in a broad sense, represent a second attack by federal habeas petition on the same conviction." *Vasquez v. Parrott*, 318 F.3d 387, 390 (2d Cir.2003); *accord Villanueva*, 346 F.3d at 55. AEDPA's so-called gatekeeping provisions are not triggered merely by the disposition of a prior petition, however. *Villanueva*, 346 F.3d at 60 (citing *James*, 308 F.3d at 167–68). Rather, a prisoner's Section 2254 habeas petition will not be considered "second" or "successive" unless his prior petition was adjudicated on the merits. *Id.* (citing *Corrao v. United States*, 152 F.3d 188, 191 (2d Cir.1998); *Slack v. McDaniel*, 529 U.S. 473, 485–86, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Respondent contends that this Court's July 30, 2002 order (Docket # 8) dismissing Bell's unexhausted claims in his initial petition "should be an adjudication on the merits." Resp't Mem. at 6 (Docket # 19). However, the Second Circuit clearly stated in *Villanueva*-a case cited by respondent in its brief-that "[b]ecause of the restrictions AEDPA imposes on successive petitions ... a first habeas ...

**2.** Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996).

petition will not be considered an adjudication on the merits for successive purposes if the petition was ... *dismissed without prejudice for failure to exhaust state remedies." Villanueva*, 346 F.3d at 60 (citing *Slack*, 529 U.S. at 485–86, 120 S.Ct. 1595) (emphasis supplied). Even a cursory reading of the Court's July 30, 2002 order makes clear that this is what occurred in the instant case. Bell's amended petition is not subject to dismissal as a "second or successive" habeas petition. Therefore, I find that all of Bell's claims in his September 1, 2003 amended petition are timely and are properly before this Court on habeas review.

### Standard of Review

Because the filing of this petition postdates the enactment of AEDPA, that statute's deferential standard of review applies to this Court's consideration of the petition. Now, a Federal court cannot grant habeas relief in a case in which there was an adjudication on the merits in a state court proceeding unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### Merits of the Petition

### Claim 1: Ineffective assistance of appellate counsel

Bell contends that appellate counsel failed to make a meritorious argument in support of his suppression claim and failed to argue the "constitutional dimension" of his insufficiency of the evidence claim. The Fourth Department summarily rejected these claims when Bell raised them in his application for a writ of error *coram nobis*.

In order to succeed on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("*Strickland*"), a habeas petitioner must satisfy a two-part test. First, he must show that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. 2052, and second, he must show that there is a "reasonable probability" that but for counsel's error, the outcome would have been different, *id.* at 694, 104 S.Ct. 2052.

■ Although the *Strickland* test was formulated in the context of evaluating the effectiveness of trial counsel, the same standard applies to claims regarding the performance of appellate counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing, *e.g., Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir.1992)). Appellate counsel need not present every non-frivolous argument that could be made on petitioner's behalf. *Mayo*, 13 F.3d at 533; *see also Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategic choices. *Mayo*, 13 F.3d at 533; *see also Jones v. Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

With respect to the alleged failure to properly argue the suppression issue, Bell faults appellate counsel for failing to point out that the prosecution did not "present any evidence of the basis of knowledge (*i.e.*, the reliability) of information contained in the 911 radio transmission upon which the state trooper based his seizure

from the defendant of a check." Amend. Pet. at 5 (Docket # 16).[3]

◼ At first blush, I agree with Bell that the reliability of the individual who called 911 was a viable issue on appeal. The Supreme Court has explained that "[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, *see Adams v. Williams*, 407 U.S. 143, 146–147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity,' *Alabama v. White*, 496 U.S. [325], 329, 110 S.Ct. 2412, [110 L.Ed.2d 301 (1990) ]." *Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). Here, however, this was not a situation involving an anonymous tip; the person who called 911 was Janice Adams ("Adams"), an employee of the credit union at which Bell unsuccessfully attempted to cash the forged check. After placing the call to 911, Adams was interviewed by the police. Adams informed them that she had received a fax from Deborah Frederick indicating that a personal check had been stolen from her and asking the bank not to cash it.

◼ Had appellate counsel broached the reliability issue on appeal, the prosecution would have introduced all of the foregoing information concerning Adams and the basis for the allegations against Bell, and the state court easily would have resolved the reliability issue in the prosecution's favor. Omission of insignificant claims that will likely be unsuccessful does not prejudice a defendant. *See Mayo*, 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful . . . .' ") (alteration in original) (quoting *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir.1992)). Because the argument that Bell identifies as erroneously omitted on appeal is without merit, he is unable to prove prejudice as a result of appellate counsel's performance. Having failed to establish prejudice, Bell cannot obtain habeas relief on this aspect of his ineffectiveness claim. *See Strickland*, 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

◼ Bell's claim that appellate counsel failed to argue the "constitutional

3. In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) ("*Stone*") the Supreme Court considered "the proper scope of federal collateral protection of criminal defendants' right to have evidence, seized in violation of the Fourth Amendment, excluded at trial in state court." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (citing *Stone*, 428 U.S. at 486, 96 S.Ct. 3037). The Supreme Court determined that federal courts should deny habeas review where the State has provided "an opportunity for full and fair litigation of a Fourth Amendment claim," because "the remedy for Fourth Amendment violations provided by the exclusionary rule 'is not a personal constitutional right.' " *Id.* (quoting *Stone*, 428 U.S. at 486, 96 S.Ct. 3037). Not-

ing that the Sixth Amendment right to effective assistance of counsel *is* a fundamental right, the *Kimmelman* court declined to extend *Stone* to mean "that criminal defendants may not raise ineffective-assistance claims that are based primarily on incompetent handling of Fourth Amendment issues on federal habeas." *Id.* at 378, 106 S.Ct. 2574. Were it to do so, the Supreme Court noted, the result would be to "deny all defendants whose appellate counsel performed inadequately with respect to Fourth Amendment issues the opportunity to 'protect their right to effective appellate counsel." *Id.* Thus, even though the basis for this aspect of Bell's ineffective assistance claim is an alleged Fourth Amendment violation, it is cognizable on habeas review.

dimension" of his insufficiency claim is unfounded. Notwithstanding counsel's failure to cite Federal case law in support of the argument that the evidence was insufficient to convict, the State courts would have been apprised of the constitutional aspect of this claim. That is so because Federal and State courts review insufficiency claims under the same standard, namely, "whether 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *People v. Contes,* 60 N.Y.2d 620, 621, 467 N.Y.S.2d 349, 454 N.E.2d 932 (1983) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). I have reviewed appellate counsel's brief and find that he competently argued the insufficiency issue and adequately preserved Bell's constitutional claim.

## Claim 2: Denial of full and fair hearing on suppression issue

Bell contends that because of appellate counsel's shortcomings and the trial court's failure to apply pertinent State and Federal case law to his search-and-seizure claim, he was not afforded a full and fair hearing on this claim.

"Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone,* 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (footnotes omitted). The Second Circuit has noted that *Stone* requires only that "the state have provided the *opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim." *Gates v. Henderson,* 568 F.2d 830, 839 (2d Cir.1977)

(*en banc* ), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978) (emphasis added). A Federal court may undertake habeas review only in one of two instances: (1) "[i]f the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process. . . ." *Id.* at 840; *accord Capellan v. Riley,* 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." *McPhail v. Warden, Attica Corr. Facility,* 707 F.2d 67, 69 (2d Cir.1983). Here, New York clearly affords defendants the requisite corrective procedures. *See* N.Y.Crim. Proc. Law § 710.10 *et seq.; see also Capellan,* 975 F.2d at 70 ("federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y.Crim. Proc. Law § 710.10 *et seq.* (McKinney 1984 & Supp.1988) as being facially adequate").

Bell is barred from now raising his Fourth Amendment claim because he was provided with, and indeed took full advantage of, the opportunity to fully adjudicate these matters in State court. Defense counsel filed a thorough motion in trial court in which he vigorously contested the validity of the officer's stop of Bell. Following a hearing, the court denied the motion to suppress in a written opinion setting forth its findings of fact and conclusions of law. Bell then had an opportunity to appeal to the Appellate Division, which likewise considered and rejected his

Fourth Amendment claims on the merits.[4] Finally, the Court of Appeals denied leave to appeal, concluding that there was no question of law presented that merited review.

Bell's various applications at the trial court and appellate levels challenging the search warrant clearly show that he was given an opportunity for a "full and fair" litigation of his Fourth Amendment claim. Therefore, it is not cognizable on habeas review.

### Claim 3: Insufficiency of the evidence

Bell contends that the evidence was insufficient to convict him on the charges involving the savings bond because the prosecution did not produce the savings bond itself. Bell argues that without the bond, "there was not sufficient proof that it was a savings bond, that the signature was a forgery, or that petitioner was the person who forged the signature." Bell also asserts that the prosecution failed to present evidence that he knew that the signature was forged.

On direct appeal, the State court held that "[c]ontrary to defendant's contention, the evidence is legally sufficient to support the conviction of criminal possession of a forged instrument in the first degree (Penal Law § 170.30), criminal possession of stolen property in the fifth degree (Penal Law § 165.40), and criminal solicitation in the fourth degree (Penal Law § 100.05[1] )." *People v. Bell,* 286 A.D.2d 931, 730 N.Y.S.2d at 755.

■ A petitioner challenging his conviction on the ground that the evidence was insufficient bears a very heavy burden. *See Knapp v. Leonardo,* 46 F.3d 170, 178 (2d Cir.1995). In evaluating the suffi-

ciency of the evidence, a Federal habeas court is required to consider the trial evidence in the light most favorable to the State, upholding the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original). The court must "view the evidence, whether direct or circumstantial, in the light most favorable to the government and credit every inference that could have been drawn in its favor." *United States v. Lopez,* 372 F.3d 86, 89 (2d Cir.2004) (quotations omitted).

■ Lindsay Cox ("Cox"), an acquaintance of Bell's, testified that on August 3, 1999, Bell presented her with an endorsed seventy-five dollar U.S. savings bond and an interim driver's license, both of which bore the name "Carissa Beal ("Beal")." According to Cox, the endorsement of Beal's name on the bond appeared to be in a man's handwriting. Cox testified that Bell asked her to impersonate Beal in order to cash the savings bond for him. Cox related that she attempted to cash the bond for Bell at two banks but was unsuccessful. Bell then reclaimed the bond and the driver's license. After the two parted company, Cox testified that she and her roommate went to the address on the license, which happened to be the home of Deborah Frederick.

On cross-examination, Cox admitted that although she did not recall the series of the bond and had never seen a U.S. savings bond before, she was certain that the document given to her by Bell was a U.S. savings bond.

---

**4.** On direct appeal, the Fourth Department held that County Court properly denied Bell's motion to suppress a stolen and forged check seized from his person because "the police at

that point had probable cause to arrest [him]." *People v. Bell,* 286 A.D.2d 931, 730 N.Y.S.2d 755, 755 (citations omitted).

Frederick testified that she kept several savings bonds in her house, one of which had a face value of seventy-five dollars and was in the name of her daughter, Carissa Beal. After speaking with Cox and her roommate, Frederick checked and discovered that all of her savings bonds had been stolen, including the one in Beal's name. She also found that one of her personal checks and Beal's interim driver's license were missing. According to Frederick, Bell had access to the bond, the license, and the check because he was staying at her house.

Later that evening, Bell telephoned Frederick and mentioned that Beal's savings bond was missing. Frederick testified that Bell stated that he owned an apology to Beal and that he would pay her back.

■ Although "the mere attempted negotiation or utterance of a forged instrument cannot, of itself, establish a presumption that defendant had knowledge the instrument was forged," *People v. Miller,* 144 A.D.2d 94, 98, 537 N.Y.S.2d 318 (2d Dep't 1989), there was proof in this matter that Bell stole Beal's U.S. savings bond from Frederick's house. In addition, Bell's statements made after the commission of the crime to Frederick were sufficient to sustain a finding that he knew the savings bond was stolen. Frederick testified that the check had not been endorsed while it was in her possession, which would allow the jury reasonably to infer that Bell had knowledge that the savings bond was forged. Viewing all of the evidence in the light most favorable to the prosecution, as I must, I find that the proof at trial was constitutionally sufficient to support Bell's convictions.

## CONCLUSION

For the reasons stated above, Jacob W. Bell's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Bell has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253. Further, I certify that any appeal from this order would not be taken in good faith. *See* 28 U.S.C. § 1915(a); *Coppedge v. United States,* 369 U.S. 438, 444, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

IT IS SO ORDERED.