People v Gretzinger (2018 NY Slip Op 05716)





People v Gretzinger


2018 NY Slip Op 05716


Decided on August 9, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 9, 2018

108676

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
PAULA F. GRETZINGER, Appellant.

Calendar Date: June 6, 2018

Before: Devine, J.P., Clark, Mulvey, Rumsey and Pritzker, JJ.


Robert M. Cohen, Ballston Lake, for appellant.
Karen A. Heggen, District Attorney, Ballston Spa (Gordon W. Eddy of counsel), for respondent.



MEMORANDUM AND ORDER
Devine, J.P.
Appeal from a judgment of the County Court of Saratoga County (Murphy III, J.), rendered July 21, 2016, upon a verdict convicting defendant of the crime of criminal possession of a forged instrument in the second degree.
Following an investigation, defendant was charged in an indictment with offenses stemming from her depositing a check into an individual bank account she was opening. The check was made out to defendant and Gerard Gretzinger (hereinafter Gretzinger), who were married but in the midst of tumultuous divorce proceedings at the time. Gretzinger only learned of the check's existence later and reported to authorities that he had not signed it. A jury trial ended with defendant being convicted of criminal possession of a forged instrument in the second
degree. County Court sentenced her to four months in jail and five years of probation. Defendant now appeals.[FN1]
Defendant contends that the evidence did not demonstrate that she possessed or uttered the check "with knowledge that it [was] forged and with intent to defraud, deceive or injure another" so as to support a conviction for criminal possession of a forged instrument in the second degree (Penal Law § 170.25; see People v Glover, 160 AD3d 1203, 1204 [2018]). In that [*2]regard, "[g]uilty knowledge of forgery may be shown circumstantially by conduct and events, and evidence of an intent to defraud or deceive may be inferred from a defendant's actions and surrounding circumstances" (People v Rebollo, 107 AD3d 1059, 1060-1061 [2013] [internal quotation marks and citation omitted]; see People v Johnson, 65 NY2d 556, 561 [1985]; People v Monteiro, 93 AD3d 898, 899 [2012], lv denied 19 NY3d 964 [2012]).
The check has a legible indorsement by defendant and an illegible one that Gretzinger testified was not his. Defendant acknowledged as much in a recorded conversation with a State Police investigator, stating that she had no contact with Gretzinger regarding the pertinent check and three others issued as a result of a homeowner's insurance claim. The other checks were deposited by defendant into an account jointly owned by her and Gretzinger, but she sought to deposit the check at issue into an individual account that she was opening at a different bank. Defendant encountered difficulty depositing the check inasmuch as Gretzinger was absent and his name was not on the new account, prompting the teller to summon the branch manager. The branch manager granted approval to accept the check for deposit and testified, among other things, that she knew defendant from prior business dealings, assumed that the second signature on the check was Gretzinger's and was given no reason to believe otherwise by defendant. Although "the mere attempted negotiation or utterance of a forged instrument cannot, of itself, establish a presumption that defendant had knowledge the instrument was forged" (People v Miller, 144 AD2d 94, 98 [1989]; see People v Johnson, 65 NY2d at 561), the foregoing proof left no doubt that defendant knew Gretzinger's indorsement on the check to be forged and nevertheless attempted to deposit the check with intent to deceive, defraud or injure another person. There was, as a result, legally sufficient proof to support the conviction (see People v Loughlin, 66 NY2d 633, 635 [1985]; People v Hoffey, 296 AD2d 660, 660-661 [2002]; People v Dean, 177 AD2d 792, 794 [1991], lv denied 79 NY2d 855 [1992]). To the extent that defendant also argues that the verdict was against the weight of the evidence, even accepting that acquittal was a reasonable possibility so as to warrant such a review, we find that "the jury was justified in finding . . . defendant guilty beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 348 [2007]).
Defendant next points out that a State Police investigator testified, after an overruled objection, that he had compared the illegible signature on the back of the check with a true one made by Gretzinger and that Gretzinger had not made the former. The People do not dispute that this was error since the investigator had not been shown to be a handwriting expert. County Court realized as much while the investigator was still on the stand and reversed course, sustaining the objection, striking the testimony and directing the jury to disregard it. County Court gave a similar instruction in its jury charge with the consent of defense counsel and, indeed, counsel relied upon the stricken response in his closing statement to emphasize the lack of expert proof that the signature on the check was a forgery. The curative action alleviated any prejudice under these circumstances and, accordingly, the initial error did not deprive defendant of a fair trial (see People v Santiago, 52 NY2d 865, 866 [1981]; People v Peterson, 118 AD3d 1151, 1155-1156 [2014], lvs denied 24 NY3d 1087 [2014]; People v Hathaway, 159 AD2d 748, 751 [1990]).
Finally, defendant argues that the imposition of a jail term as part of the sentence was inappropriate. Defendant had no prior criminal record and County Court admitted its struggle to divine an appropriate sentence, citing the "unusual" nature of the case, the effect that defendant's incarceration might have upon her children and her "sincere" remorse at sentencing. In spite of these mitigating facts, County Court felt that a period
of incarceration was warranted due to defendant's delay in accepting responsibility for her actions and her postverdict conduct. It therefore imposed a jail term of four months as part of the sentence.
"Ordinarily, we refrain from exercising our power to modify a sentence unless the [*3]sentencing court abused its discretion or extraordinary circumstances exist warranting such a modification" (People v Ruger, 288 AD2d 686, 687 [2001] [citations omitted], lvs denied 97 NY2d 728, 733 [2002]; see CPL 470.15 [6] [b]; People v Wyrick, 154 AD3d 1181, 1182 [2017]). In our view, the circumstances surrounding the commission of the crime and defendant herself are extraordinary and warrant the exercise of that power. Defendant has already served 13 days in jail and, as a matter of discretion in the interest of justice, we reduce the jail component of her sentence to time served (see People v Becker, 71 AD3d 1372, 1372 [2010]; People v Ruger, 288 AD2d at 687-688; People v Riservato, 155 AD2d 793, 793 [1989]; People v Bagley, 128 AD2d 980, 981 [1987]; People v Lustgarten, 118 AD2d 1033, 1034-1035 [1986]).
Clark, Mulvey, Rumsey and Pritzker, JJ., concur.
ORDERED that the judgment is modified, as a matter of discretion in the interest of justice, by reducing the jail sentence imposed to a term of time served; matter remitted to the County Court of Saratoga County for further proceedings pursuant to CPL 460.50 (5); and, as so modified, affirmed.



Footnotes

Footnote 1: This Court stayed execution of the judgment of conviction pending appeal and fixed bail (2017 NY Slip Op 86750[U] [2017]).